No. 2329

## MOLLIE J. HENDRICK *v.* JAMES L. WALTON ET AL.

1. **STATUTE CONSTRUED—DAMAGES.**—The right of action declared by arti.
cle 2899, Revised Statutes, for damages for the wrongful act, negligence,
unskillfulness or default which causes the death of another, did not ex-
ist at common law; construing that section, *held:*

     (1) That the change of one subdivision of that section by the act of
March 25, 1887, did not operate to change the construction of another
and independent clause as derived from the original context of the act.

     (2) In the first subdivision of the article the Legislature did not mean
to apply the rule that the act of the agent is the act of the principal,
and to make private persons responsible for the death of others when
not caused by their own immediate act or omission.

     (3) That section was intended to impose greater liability upon carriers
by making them responsible for the gross negligence of their agents, and
to leave the liability of others for the acts of their agents as it existed
at common law.

2. **SHERIFF—DAMAGES.**—A sheriff and the sureties on his official bond are
not liable under the provisions of article 2899 of the Revised Statutes in
damages for the wrongful act of his deputy, who unlawfully kills an-
other, who, having been arrested, was, when killed, attempting to make
his escape. This held without deciding the question whether the homi-
cide was under article 4521 of the Revised Statutes an "official act," for
which the sheriff could be held responsible.

APPEAL from Navarro. Tried below before the Hon. Sam R.
Frost.

*Read, Greer & Greer,* for appellant: On their proposition that
the court erred in sustaining a general demurrer to appellant's
first amended original petition, and dismissing the cause,
because the petition presented a good cause of action. The peti-
tion showed a wrongful killing of the husband and father of
appellants by the sheriff of Navarro county, acting by his deputy,
whilst engaged in the discharge of his official duty, and the
damages to appellants consequent on such killing, cited Penal
Code, subdivision 8 of article 557; Code Criminal Procedure,
article 229; Caldwell v. The State, 41 Texas, 97, 230; McCue v.
Klien, 60 Texas, 168.

That the sheriff and the sureties on his official bond are liable
in damages, for all acts done by the sheriff's deputy, by virtue

of his office, or in the discharge of the official duties of the sheriff, in excess of the authority of the officer or an improper exercise of that authority, which cause injury to third persons, they cited Revised Statutes, article 4521; Hays v. Creary, 60 Texas, 445; Holliman v. Carroll, 27 Texas, 26; The People v. Schuyler, 4 New York, 187.

That acts *virtute officii* which give cause of action, are acts within the authority of the officer, but in doing them, he may exercise that authority improperly, or abuse the confidence which the law reposes in him; whilst those done *colore officii*, are where they are of such a nature as his office gives him no authority to do them, they cited Holliman v. Carroll, 27 Texas, 27; Hays v. Creary, 60 Texas, 445; People v. Schuyler, 4 New York, 173; Forsyth v. Ellis, 4 J. J. Marsh, 299 (Kentucky); Huffman v. Kooppleken, 1 Northwestern Reporter, 243; Skinner v. Phillips, 4 Massachusetts, 68.

That in this State as to third person and the acts of a deputy and sheriff, the sheriff and his deputy are one person, they cited article 4521, Revised Statutes 1879; Hays v. Creary, 60 Texas, 445; 4 Southwestern Reporter, 242; Herlock v. Rhienhardt, 41 Texas, 582.

*Croft & Blanding*, for appellee:  That an officer or other person ordered verbally to arrest another is justified in killing, in case of felony, or for the prevention of a felony, they cited Code Criminal Procedure, article 230; Penal Code, article 562; Archer's Criminal Law, section 29; 2 Haile, 118, 119; 1 East P. C., 298, 299, 300; Wharton's Criminal Law, page 472; Wharton on Homicide, 50; Revised Statutes adopting common law of England, article 3128.

That a sheriff is not liable for the acts of his deputy, *colore officii*, nor when the latter comes under the censure of the law for a criminal offense; and he is in no degree liable for his criminal acts, they cited Murfree on Sheriffs, sections 59, 60, 61, 77; Dorr v. Mickley, 16 Minnesota, 20-24.

That securities for a sheriff who execute a bond enumerating the duties of accounting for and returning all process and precepts; paying all sums of money, etc., with an addition that the sheriff shall faithfully execute the said office of sheriff according to law, are not responsible for his defaults in the duties prescribed by the latter clause; for general words do not impose upon the sureties an obligation that the sheriff shall commit no wrong by

color of his office, they cited Murfree on Sheriffs, sections 45-47, and authorities cited; Sutherland on Damages, 32, and cases cited.

That, to charge the sureties on a sheriff's bond, the act complained of must not only be one which he might rightfully do as sheriff, but which must actually be done by him, under a claim of right to do the act as such officer. It must be a violation of the conditions of his bond, they cited Code of Criminal Procedure, articles 226, 227, 229, 230; Heidenheimer Bros. v. Brent, 59 Texas, 534; Holliman v. Carroll, 27 Texas, 23; Hamilton v. Ward, 4 Texas, 356; Thomas v. Browder, 33 Texas, 783; Clinton v. Nelson, 2 Utah, 284; Ex parte Thompson, 1 Flippin, United States Circuit Court, 507; Dorr v. Mickley, 16 Minnesota, 20, 24.

GAINES, ASSOCIATE JUSTICE. This suit was brought by appellant, as the surviving widow of J. M. Hendrix, for the benefit of herself and their minor children, against James L. Walton, as sheriff of Navarro county, and the other appellees as sureties on his official bond. The petition alleged the official character of the defendant, Walton, and the execution of his official bond by himself and the other defendants as his sureties, and the appointment by him of one W. G. Jackson as his deputy. It also alleged that Jackson, as such deputy, having arrested J. M. Hendrix, the husband of appellant, unlawfully shot and killed him, while he was running away and attempting to make his escape. The arrest is averred to have been made by virtue of a warrant issued by a justice of the peace, upon a complaint of theft of a horse, and also by virtue of information communicated to Jackson by the justice, that Hendrix was charged with the commission of that offense. The petition contained other averments, in order to make a case under the statute giving a right of action for injuries resulting in death, when caused by the wrongful act of another, but they need not be detailed. A general demurrer to the petition was sustained, and the plaintiff having declined to amend, the suit was dismissed.

The action of the court in sustaining the demurrer is assigned as error. Appellees seek to support the judgment of the court upon two propositions: first, that the statute does not authorize an action against the principal for the act of his agent; and second, that the act of the deputy complained of was not an official act for which the law will hold the sheriff and his sureties responsible. If either can be successfully maintained, the judg-

ment must stand. The judge below based his ruling upon the former ground, and we concur in his construction of the law.

By article 2899 of the Revised Statutes, an action is given—

"1.   When the death of any person is caused by the negligence or carelessness of the proprietor, owner, charterer, hirer of any railroad, steamboat or stage coach, or other vehicle for the conveyance of goods or passengers, or by the unfitness or gross negligence or carelessness of their servants or agents.

"2.   When the death of any person is caused by the wrongful act, negligence, unskillfulness or default of another." In the first place, it is to be observed that this is not the regulation or extension of a right previously existing at common law. The right of action for injuries resulting in death is wholly the creature of the statute, and the authority of the suit here brought, if found at all, must be found in the written law itself.

If the second subdivision of the article quoted stood alone, it would be a grave question whether we should not apply to it the maxim that what one does for another he does himself, and to hold, that it not only gives a right of action against one whose own immediate act or negligence is the cause of the death of another, but also against a principal, when the death has been caused wrongfully or negligently by the act of his agent.

Neither principal nor agents are named in the subdivision in question. But in subdivision 1, immediately preceding this, an action is given against the carriers to whom it applies for fatal injuries not only caused by their own personal negligence, but also where accruing from the gross negligence of their servants or agents. This provision has been construed by this court in the case of the Missouri Pacific Railway Company v. Scott, decided at the Tyler term, 1886, and is held to afford no remedy against a railroad company when the death is caused by the mere ordinary neglect of the servants or agents of the corporation. This law was amended by the omission of the word "gross" by the act of March 25, 1887 (Laws Twentieth Legislature, p. 44); but the amendment was subsequent to the accrual of the alleged cause of action in this case, and has no bearing upon the question. Besides, the change of one clause of a statute by amendment does not operate to change the construction of another and independent clause, as derived from the context of the original act.

It is clear, therefore, that in the first subdivision of article 2899, the Legislature did not mean to apply the rule that the act of the agent is the act of the principal, because for the ordinary

negligence of the agent it does not make the principal liable. Now, is it reasonable to presume that they intended to exempt corporations owning steamboats and railroads, who can only act through agents, from liability for ordinary neglect of their agents and servants, and at the same time to make private persons responsible for the death of others, when not caused by their own immediate act or omission? We think not; we rather think it was the purpose to impose the greater liability upon carriers, by making them responsible for the gross negligence of their agents, and at the same time to leave the liability of others for the acts of their agents as it existed at common law. Other provisions of the Revised Statutes do not indicate the policy or disposition to favor railroad companies, or other carriers, in the matter of their liability for negligence, but rather the contrary. They are generally held, in this respect, to a rigid accountability and are expressly prohibited by statute from restricting by contract their liability at common law. (Revised Statutes, article 278.) It is not consistent with the policy thus manifested to render all others liable for the ordinary neglect of their agents and to exempt common carriers under like circumstances. The Legislature did not intend this. The mention of agents and servants in the first subdivision, quoted above, and the omission of such mention in the second, indicate also that by the latter it was not meant to give any right of action against principals for the torts of their agents. The policy of our legislation and the language of the article cited both conspire to show that the construction placed upon the statute by the trial judge is correct.

The considerations of natural justice and of public policy, which have doubtless induced the enactment of similar laws in other States, do not seem to have led to any very uniform result, either as to the persons to be held liable nor as to the beneficiaries of the action. The English Statute (9 and 10 Vic., ch. 93), known as Lord Campbell's Act, contains substantially the language of the second subdivision quoted from our law, but not of the first, and hence may be fairly intended to have a more comprehensive meaning. The statutes of New York, Vermont, New Jersey, Ohio, Illinois, Indiana, Michigan, Wisconsin, California, Oregon, Missouri, Minnesota, Kansas, Alabama and Mississippi are in this particular substantially the same as the English act. Neither does North Carolina law vary in substance though it names steamboat and railroad companies and proprietors. The New Hampshire statute on the other hand

gives the right of action against "the proprietor of any railroad" for the death of any person in their employment—but in no other case. The language in that law "or by the unfitness, gross negligence or carelessness of their servants or agents," seems to have been taken from our original act. (See N. H. Gen. Laws, 1867, p. 529, and Pas. Dig., art. 15.)

The Revised Statutes of Connecticut, 1866 (p. 202) give an action for the death of passengers and persons crossing upon a public highway against railroad companies only, and uses the same language with reference to servants and agents except that the word "gross" before the word "negligence" is omitted. The Rhode Island act limits the liability to common carriers. The statute of Arkansas and of Louisiana give the remedy generally against all persons who wrongfully cause the death of another. These enactments show the diverse views of legislators upon the subject, and lead to the conclusion that they are not agreed as to the demands of natural justice in the premises.

Since, therefore, the language of our statute indicates that the Legislature of our State did not mean to make persons responsible for the acts of their agents in these cases, except such as are specified in the first subdivision of the article cited, it is but reasonable to conclude that they intended to render other persons liable only for their own immediate acts. Several States, as has been seen, restrict the liability altogether to common carriers; and our Legislature, as to others, may have well considered that a greater degree of culpability attaches to one who does a wrongful act himself, than to the principal when the act is done by his agent, and may have determined therefore to confer no right of action in the latter case.

We have no authoritative decision upon the point in this State; and there being no statute exactly like ours, which we have been able to find, it is not likely the question has been decided in the courts of any other State. We are cited, however, by appellant's counsel to the cases of Aaron v. Broiles, 64 Texas, 318, and to the City of Galveston v. Barbour, 62 Texas, 172. In neither case is the question raised. In the former the appellees, the defendants below, were alleged to have directly caused the injury; so that their liability for the act of an agent was not presented in the case. In the latter, the point not having been raised, is not decided by the court. We have felt constrained, therefore, to treat it as an open question, and to determine it without reference to the cases cited.

Since the act complained of was not the immediate act of the sheriff, it follows from what we have said that it is our opinion that no cause of action is shown by the petition against him and his sureties.

We do not pass upon the question whether the homicide alleged is an "official act" of the deputy, for which the sheriff could be held responsible. (Revised Statutes, article 4521.) That question is not without difficulty, but we are not called upon to decide it.

There is no error in the judgment, and it is affirmed.

*Affirmed.*

Opinion delivered November 18, 1887.