ASHER et al. v. CABELL et al.

(Circuit Court of Appeals, Fifth Circuit. May 30, 1892.)

No. 3.

1. DEATH BY WRONGFUL ACT—ACTS OF SERVANTS AND AGENTS.
    Under Rev. St. Tex. art. 2899, giving a right of action for wrongful death, a liability for the acts of agents or servants is confined to common carriers, and all other persons are liable for their own acts alone. Hendrick v. Walton, 6 S. W. Rep. 749, 69 Tex. 192, followed.

2. SAME—UNITED STATES MARSHAL — KILLING OF PRISONERS BY MOB — INCOMPETENT DEPUTY.
    Under this statute, a United States marshal, who, knowing that certain lawless persons are hostile to a prisoner in his custody, delivers him for transport, shackled, to a deputy, whom he knows to be incompetent and unfit, is liable on his official bond, because of his own negligence, for the killing of such prisoner by a mob, through the deputy's unfitness. BRUCE, District Judge, dissenting.

In Error to the Circuit Court of the United States for the Northern District of Texas.

At Law. Action by Venia Asher and her husband, Thomas Asher, against William L. Cabell, formerly United States marshal, and his sureties, for permitting a prisoner to be killed by a mob. Judgment for defendants on demurrer to the petition. Plaintiffs bring error. Reversed.

Statement by PARDEE, Circuit Judge:

This cause was heard in the court below on exceptions to the plaintiffs' second amended original petition, which it seems necessary to give in full, as follows:

"By leave of the court, plaintiffs amend their first amended petition filed herein on the ——— day of February, 1891, so that the same shall read as follows:

"Venia Asher, joined by her husband, Thomas Asher, hereinafter styled 'plaintiffs,' complaining of William L. Cabell, James Moroney, C. W. Terry, J. S. Daugherty, E. M. Tillman, Hugh Blakeny, and Philip Sanger, who are hereinafter styled 'defendants,' respectfully represents:

"That at the time of the institution of this suit, to wit, on the 18th day of January, 1890, the said Venia resided in Young county, Texas, in said district, and was at that time the widow of Alfred Aaron Marlow, who was slain by a mob in said Young county, as will be hereinafter related; that during the pendency of this suit she has intermarried with Thomas Asher, her coplaintiff, who joins her in this action; and she, with the minor children, hereinafter named, of herself and her deceased husband, now resides with her present husband, the said Thomas Asher, in the Indian Territory.

"The above-mentioned defendants are all residents and citizens of the county of Dallas, in said northern district of Texas.

"Plaintiffs sue for actual damages on account of injuries causing the death of said Alfred Aaron Marlow, and seek a recovery on the official bond of the said William L. Cabell as United States marshal, such action being brought and such recovery being sought for the benefit (1) of said Venia, formerly wife and widow of said deceased; (2) of Williamson Wilson Marlow, a boy of four years old, and Annie Laurie Marlow, a girl two years old, the minor children of said Venia and Alfred Aaron; and (3) of Martha Jane Marlow, the widowed mother and only surviving parent of said deceased, who now resides in the county of Ouray, in the state of Colorado.

"That heretofore, to wit, on the 28th day of April, 1886, the defendant William L. Cabell was duly appointed and commissioned marshal of the United States for the northern district of Texas; and that on the 25th day of November, 1887, the said Wm. L. Cabell as principal, with the other defendants as sureties, made, executed, and delivered, in conformity to law, a certain official bond of the said Wm. L. Cabell as such marshal, in the sum of twenty thousand dollars, ($20,000,) which said bond was in due time approved by the proper authority, and a copy of the same is hereto attached and made a part of this petition.

"The condition contained in said bond is as follows:

"'Now, if the said William L. Cabell, by himself and by his deputies, shall faithfully perform all the duties of the said office of marshal, then this obligation to be void; otherwise to remain in full force and virtue.'

"Which conditions, being fully interpreted, mean, amongst other things, that one of the duties of such officer and his deputies is and was to safely keep in custody and from harm, to humanely treat and carefully protect, all prisoners lawfully committed to or held in the custody of said marshal and his

deputies, or any of them; and, further, that the said marshal would appoint and retain in his service as deputies none but fit, proper, and competent persons.

"That thereafter, to wit, on the 19th day of January, 1889, and before that day, in the county of Young, in said district, the said Wm. L. Cabell, while marshal, as aforesaid, by his duly-authorized deputy marshal, Ed. W. Johnson, (who was then and there acting under the immediate orders and instructions of said William L. Cabell,) had in his custody, by reason of such orders and instructions, and also by virtue of office and by lawful authority, several certain prisoners of the United States, one of whom was Alfred Aaron Marlow, then the husband of the plaintiff Venia Asher, the father of her minor children, herein named, and the son of Martha Jane Marlow.

"That for a long time prior to the said 19th day of January, 1889, and on that day, there was great hostility and violent public prejudice openly manifested by certain lawless persons in said Young county towards said Alfred Aaron Marlow and certain of his fellow prisoners, to wit, his three brothers, Lewellen Marlow, George Marlow, and Charles Marlow, who at the same time were confined with him in the county jail of Young county upon the lawful orders of a proper officer of the United States, on charges of violating the laws thereof, which charges, upon final trying in the proper court, proved to be unjust and groundless.

"That on and before said 19th day of January, 1889, William L. Cabell, marshal as aforesaid, was well aware of the excited and lawless and dangerous condition of public sentiment in Young county against his said prisoners, and of the hostility and prejudice entertained against them by the lawless persons aforesaid, as was also the said Ed. W. Johnson, his deputy; yet, notwithstanding such knowledge, the said William L. Cabell, being then and there in the county of Dallas, ordered the said Ed. W. Johnson, who was then and there in the county of Young, about one hundred and twenty miles (120) distant from the county of Dallas, to remove said prisoners from the county jail of Young county, leaving the time and manner of their removal to the discretion of said Johnson.

"Plaintiffs would now further show to the court that said Ed. W. Johnson was an improper and unfit person to perform the hazardous and responsible duty of removing said prisoners under the circumstances herein detailed, and this the said William L. Cabell well knew or might have known by the use of ordinary diligence.

"For that said Johnson was a brawling and quarrelsome man, with little respect for the laws of the land, and, prior to his appointment by the said marshal, had committed a homicide. That during his tenure of office as deputy marshal under said William L. Cabell, and prior to said 19th day of January, 1889, he had lost his right arm in a personal shooting affray over a lewd woman, in which affray he committed still another homicide. That, being morally unfit for the place he held, he, the said Johnson, became, by reason of his maiming, as aforesaid, physically unfit and incapacitated for the performance of the duties of his office, especially in a frontier region, such as that in which Young county is situated, and also in the Indian country, which to a great extent was his field of duty; and more especially was said Johnson unfit in every way for the post of chief deputy marshal, which he held at Graham in said Young county, where one branch of this honorable court is located, —all of which said William L. Cabell was bound to know, and did know, and still retained the said Johnson in his service as chief deputy in that portion of his district.

"And that furthermore, by reason of the carelessness and unfitness of said Johnson for the position so held by him, the said jail in which the aforementioned prisoners were confined had been attacked on the 17th day of January,

1889, by a numerous mob, composed of the lawless persons aforesaid, who were wickedly bent and determined upon doing to the said Alfred Aaron Marlow and his aforementioned fellow prisoners great bodily harm.

"That said Ed. W. Johnson resided in said town of Graham, and was there at the time of the attack on the aforementioned jail and before that time. That the said federal prisoners therein confined had all been to such jail committed upon arrests made by him; yet, disregarding his lawful and sworn duties, the said Johnson suffered persons to be employed as guards at said jail who were in sympathy with the lawless persons aforesaid, who were compassing the destruction of said prisoners, and made no effort to repel the attack of said lawless persons, or to stay their violence, which was open and notorious, but left said prisoners to deal with their assailants as best they could, with their naked hands; nor did said Johnson take any measures to arrest or bring to justice the said lawless persons,—all of which the said William L. Cabell well knew, or might have known by the use of ordinary diligence, there being at the time communication by wire between the town of Graham, where said Johnson was, and the city of Dallas, where said Cabell was, at the time of the happening of the matters and things aforesaid. That by messages from said Johnson and other persons, and from news dispatches published in daily newspapers the next day, the said William L. Cabell was fully informed of the attack on said jail, and of the imminent danger which menaced the lives of his said prisoners.

"That, knowing the matters and things hereinbefore related, and that they had taken place almost under the very eyes of said Johnson, the said William L. Cabell carelessly, wrongfully, and negligently further intrusted the safekeeping and removal of said prisoners from the jail in which they were confined to his said deputy, on the 19th of January, 1889, two days after the attack on said jail.

"And the said William L. Cabell, by virtue of his office and the lawful authority aforesaid, and by his orders and instructions unto the said Ed. W. Johnson immediately directed, caused the said Johnson, on the date last aforenamed, to take said prisoners and the said Alfred Aaron Marlow into his official charge, with further orders to remove them from the said county jail of Young county. That said marshal could easily have given to said removal his personal attention, or have intrusted the same to a proper deputy, which was then and there his sworn duty.

"That while said Alfred Aaron Marlow and his fellow prisoners aforenamed were in the custody of said marshal, as before recited, a large number of the lawless persons aforementioned, having at heart the injury, great bodily harm, and destruction of said prisoners and the said Alfred Aaron, had unlawfully, willfully, wrongfully, wickedly, and maliciously combined, confederated, and conspired together to carry out their wicked and unlawful purposes, all of which the said Johnson well knew, and through him the said William L. Cabell well knew, or might have known by the use of ordinary diligence.

"That, well knowing the great hostility which, prior to the said 19th day of January, 1889, and on that day, had been openly and notoriously manifested by said lawless persons against the aforementioned prisoners, the said William L. Cabell wrongfully and negligently permitted the said Ed. W. Johnson—an unfit person for such service in any event—to attempt the removal of said prisoners in the nighttime, which the said Johnson did, contrary to common sense, to ordinary discretion and care, and against the advice, warning, and admonitions of divers good citizens of said Young county.

"That under the circumstances aforementioned said prisoners, for the purpose of removal, were taken from their place of confinement in the nighttime, in the presence of a large number of the boisterous and lawless persons afore-

said, by the said Ed. W. Johnson; and, well knowing the dangers surrounding him, the said deputy marshal wholly failed to provide reliable guards to protect said prisoners, but, on the contrary, knowingly selected as guards a force made up almost entirely of the same lawless persons who had wickedly and unlawfully, on the 17th day of January, 1889, attacked, as hereinbefore recited, the jail in which said prisoners were confined, for the purpose of taking their lives, or of doing them great bodily harm.

"And a large number of others of the lawless persons aforementioned, in pursuance of their unlawful and malevolent purposes and designs, combined together as a mob, and, being in collusion with the guards selected by said deputy marshal as aforesaid, did, on the 19th day of January, 1889, in the county of Young, in said northern district of Texas, unlawfully, willfully, wrongfully, maliciously, and cruelly assault with guns and firearms the said prisoners, and did then and there, under circumstances of peculiar atrocity and barbarity, mortally wound and shoot to death the said Alfred Aaron Marlow, without any fault or cause therefor on his part.

"That at the time of the unlawful and murderous assault last above mentioned the prisoners aforenamed, including the said Alfred Aaron Marlow, being securely shackled together in pairs by their ankles, were unable to escape, and, being unarmed, were unable to defend themselves against the persons so assaulting them, except as they might disarm their assailants under the impulse of the great peril besetting them.

"Plaintiffs aver that at the time of the night attack upon the prisoners aforesaid, bound and defenseless as they were, in which the said Alfred Aaron Marlow was shot to death as hereinbefore recited, the said deputy marshal, and said guards in his employ, unlawfully deserted said prisoners, and immediately joined with said other lawless persons who were then and there assaulting said prisoners, thereby delivering said prisoners into the hands of said mob. That neither said Johnson nor his said guards fired a single shot in defense of said prisoners, but, on the contrary, joined the said mob, and aided the lawless persons composing the same by helping them to shoot, wound, and kill the said prisoners. That several of said guards voluntarily handed over their arms to said mob, except such as were seized by said prisoners to use in their self-defense; and said Johnson himself was disarmed by one of said prisoners as he, the said Johnson, was in the act of voluntarily handing over his pistol to one of the lawless persons.

"In conclusion, plaintiffs allege that said deputy marshal and his said guards colluded and conspired together with said lawless persons so assaulting said prisoners; and that, in order to carry out such conspiracy, said deputy marshal knowingly employed as guards other lawless persons, who, but two days prior to their summons to serve as such guards, had been engaged in the attack on the jail where said prisoners were then confined, and had, immediately prior to their said summons so to serve as guards, made known their purpose to kill and murder said prisoners; and that Ed. W. Johnson, deputy marshal, removed said prisoners from the jail of Young county, and, with the assistance of said persons so summoned as guards, carried them in the nighttime to a lonely and secluded spot, distant from human habitations, and, when said prisoners were attacked by said lawless persons, the said deputy marshal, in accordance with a previous understanding with said persons then and there making said attack, did, with his guards, unlawfully desert said prisoners, and leave them to be attacked and murdered by said mob, without making any effort whatever to protect them.

"That by reason of such attack the said Alfred Aaron Marlow was killed, as also was his brother, Lewellen Marlow, and George Marlow and Charles Marlow were permanently disabled by gunshot wounds. Nor did the said William L. Cabell, after the occurrences herein related, dismiss or discharge

said Johnson from his service, but retained him as deputy until his, said Cabell's, successor was appointed, long afterwards, thus virtually ratifying and approving said acts.

"Wherefore, in the matters and things hereinbefore recited, which led to the cruel and inhuman murder of said Alfred Aaron Marlow, plaintiffs allege that said William L. Cabell, marshal as aforesaid, acted wrongfully and negligently, and that by reason of such wrongful acts and negligence the said Alfred Aaron met his death.

"Plaintiffs show that the said Alfred Aaron, being a young man, 26 years of age, had a reasonable expectancy of a continuance of life for a further period of thirty-eight years; that he was an industrious and sober laboring man, whose earnings were, on an average, fully five hundred ($500) dollars a year, and that he supported his family comfortably for a man in his sphere of life; that his mother, Martha Jane Marlow, for whose benefit this suit is also brought, is an aged woman, 65 years old, and almost helpless; that she has still a reasonable expectancy of a continuance of life for a further period of eleven years; that she was largely dependent upon the assistance of her said son, during his lifetime, for her sustenance, and that he dutifully recognized her dependence upon him, and contributed to her maintenance and support fully $100 a year up to the time of his death.

"Wherefore, plaintiffs say that there has been a breach of the official bond of the said William L. Cabell, marshal, as aforesaid, and that by reason of the facts herein set forth the said marshal and his sureties are liable to plaintiffs on said bond for damages in the sum of $10,000; and they pray that said defendants, being already herein duly cited, be, on final trial, adjudged to pay said sum and the costs of this suit, and that they have general relief."

To the said petition the defendants filed their second amended original answer, as follows:

"Now at this time come the defendants in the above entitled and numbered cause, and by leave of court file this, their second amended original answer, in lieu of their first amended original answer, filed in this cause on February 6, 1891, and plead anew as follows:

"(1) Now at this time come the defendants in the above entitled and numbered cause, and demur to the pleading of the plaintiffs herein, and they except to the sufficiency of the second amended original petition of plaintiffs filed herein, and say that the matters therein alleged, if true, constitute no cause of action against these defendants, and of this the said defendants pray the judgment of the court.

"(2) And specially excepting to the said pleading of the plaintiffs, these defendants say that the same is insufficient, because said petition shows that the acts complained of, and on account of which plaintiffs seek to hold these defendants liable, were not the immediate acts of these defendants themselves, nor of any of them, and hence the plaintiffs show no right of recovery against defendants.

"(3) And, further, these defendants specially except to plaintiffs' pleading, because on the face of said pleading it appears that the cause of action alleged by the plaintiffs against these defendants accrued and arose (if it ever existed) more than one year before the filing of plaintiffs' second amended original petition herein, in which for the first time plaintiffs set out their alleged cause of action, on which they now ask recovery, and hence on said causes of action (if they ever existed) are now barred by the statute of limitation of one year.

"(4) These defendants also specially except to all those extensive portions of the second amended original petition of the plaintiffs herein which are made up of statements regarding injuries and wrongs which occurred long

prior to the alleged death of Alfred Aaron Marlow, which were not the injuries which resulted in his death, because all such allegations are inappropriate, and are evidently alleged by the plaintiffs for their oratorical effect.

"(5) And, should the foregoing demurrer and special exceptions be by the court overruled, then these defendants, further answering to the plaintiffs' second amended original petition herein, come and deny each and every allegation in said pleading contained, and they call for strict proof, and of this they put themselves on the country, and hence pray judgment that they go hence," etc.

Upon the hearing of the exceptions to the said second amended original answer, the court below rendered judgment sustaining the said second exception, and thereupon, the plaintiffs declining to amend, dismissed the suit. The plaintiffs have brought the case to this court for review, and assign as error "that the court erred in sustaining the defendants' second exception to plaintiffs' second amended original petition, and in dismissing this cause, as will appear from an inspection of said petition, the defendants' demurrer, and the court's judgment thereon."

No written opinion appears to have been given by the judge rendering the decision, and defendants in error submitted no arguments or brief in the case.

*M. L. Crawford, Andrew J. Houston,* and *Edwards & Blewett,* for plaintiffs in error.

*Bassett, Seay & Muse* and *McCormick & Spence,* for defendants in error.

Before PARDEE, Circuit Judge, and LOCKE and BRUCE, District Judges.

PARDEE, Circuit Judge. It is well settled that by the common law no civil action lies for an injury to a person which results in his death. *Insurance Co.* v. *Brame,* 95 U. S. 754–756; *Dennick* v. *Railroad Co.,* 103 U. S. 11–21; *The Harrisburg,* 119 U. S. 199–214, 7 Sup. Ct. Rep. 140. There is no statute of the United States giving such an action in the courts of the United States. It follows that, if such action can be maintained, authorities must be found therefor in the statute of the state wherein the injury occurred. Article 3128, Rev. St. Tex., is as follows:

"The common law of England (so far as it is not inconsistent with the constitution and laws of this state) shall, together with such constitution and laws, be the rule of decision, and shall continue in force until altered or repealed by the legislature."

It follows that in the state of Texas no civil action will lie for injuries resulting in death, unless authorized by statute, and the following is the only statute on the subject:

"An action for actual damages on account of injuries causing the death of any person may be brought in the following cases: *First.* When the death of any person is caused by the negligence or carelessness of the proprietor, owner, charterer, or hirer of any railroad, steamboat, stagecoach, or other vehicle for the conveyance of goods or passengers, or by the unfitness, negligence, or carelessness of their servants or agents. *Second.* When the death of any person is caused by the wrongful act, negligence, unskillfulness, or default of another." Rev. St. Tex. art. 2899.

The construction to be given article 2899 seems to be clear. As against common carriers, an action is given for injuries resulting in the death of a person, when caused by the negligence or carelessness of the common carrier, or by the unfitness or negligence or carelessness of the servants or agents of the common carrier; as against all other persons, the cause of action for injuries resulting in death is only given when the death is caused by the wrongful act, negligence, unskillfulness, or default of the defendant himself. In other words, common carriers are made liable for the unfitness, negligence, and carelessness of their servants or their agents resulting in the death of a person. Other than common carriers are not made liable except for their own wrongful acts, negligence, unskillfulness, or defaults, when the same results in the death of a person. And this seems to be the construction given to the statute by the supreme court of the state of Texas. In *Hendrick* v. *Walton*, 69 Tex. 192, 6 S. W. Rep. 749, which was a suit brought against a sheriff for the wrongful and unlawful act of his deputy in killing a person, the supreme court of the state of Texas, construing article 2899, among other things, said:

"In the first place, it is to be observed that this is not the regulation or extension of a right previously existing at common law. The right of action for injuries resulting in death is wholly the creature of the statute; and the authority of the suit here brought, if found at all, must be found in the written law itself. If the second subdivision of the article quoted stood alone, it would be a grave question whether we should not apply to it the maxim that what one does for another he does himself, and to hold that it not only gives a right of action against one whose own immediate act or negligence is the cause of the death of another, but also against a principal, when the death has been caused wrongfully or negligently by the act of his agent. Neither principal nor agents are named in the subdivision in question, but in subdivision 1, immediately preceding this, an action is given against the carriers, to whom it applies, for fatal injuries, not only caused by their own personal negligence, but also where accruing from the gross negligence of their servants or agents. This provision has been considered by this court in the case of *Railway Co.* v. *Scott,* (decided at the Tyler term, 1886,) and is held to afford no remedy against a railroad company when the death is caused by the mere ordinary neglect of the servants or agents of the corporation. This law was amended by the omission of the word 'gross' by the act of March 25, 1887, (Laws 20th Leg. p. 44,) but the amendment was subsequent to the accrual of the alleged cause of action in this case, and has no bearing upon the question. Besides, the change of one clause of a statute by amendment does not operate to change the construction of another and independent clause as derived from the context of the original act. It is clear, therefore, that in the first subdivision of article 2899 the legislature did not mean to apply the rule that the act of the agent is the act of the principal, because for the ordinary negligence of the agent it does not make the principal liable. Now, is it reasonable to presume that they intended to exempt corporations owning steamboats and railroads, who can only act through agents, from liability for ordinary neglect of their agents or servants, and at the same time make private persons responsible for the death of others, when not caused by their own immediate act or omission? We think not. We rather think it was the purpose to impose the greater liability upon carriers by making them responsible for the gross negligence of their agents, and at the same time to leave the liability of others for the acts of their agents as it existed at common law. * * *

Since, therefore, the language of our statute indicates that the legislature of our state did not mean to make persons responsible for the acts of their agents in these cases, except such as are specified in the first subdivision of the article cited, it is but reasonable to conclude that they intended to render other persons liable only for their own immediate acts."

The question, then, to be determined in the present case is whether the second amended original petition filed by the plaintiffs in the circuit court shows a case where the defendant Cabell, late marshal, is sued for his own wrongful acts, negligence, and defaults. The said petition shows that the defendant Cabell, as United States marshal, had in his custody, under lawful process of the United States courts, certain prisoners, one of whom was Alfred Aaron Marlow, whose widow brings this present suit; that against the said prisoners then and there in the custody of the marshal there was great hostility and violent public prejudice openly manifested by certain lawless persons in Young county, in the jail of which county said prisoners were confined; that an attack had been made by the said lawless persons upon the said prisoners while confined in the jail aforesaid, and that in such attack the marshal's deputies and guards made no effort whatever to protect the said prisoners, but were in sympathy with the lawless persons aforesaid; that the defendant Cabell was well aware of the attack upon the jail aforesaid, and of the excited, lawless, and dangerous condition of public sentiment existing in said county against said prisoners, and of the hostility and prejudice entertained against them by the lawless persons aforesaid; that the said Cabell, marshal, committed the custody of said prisoners, including said Alfred Aaron Marlow, to his deputy, one Ed. Johnson, well knowing said Ed. Johnson to be an unfit and improper person to be a deputy marshal, or to be in charge of the custody and control of the said prisoners; and that the said marshal, well knowing the unfit and improper character of the said deputy, and well knowing the notorious hostility and prejudice existing against the said prisoners on the part of the lawless persons aforesaid, and of a previous failure of his deputies and guards to protect said prisoners, wrongfully and negligently directed and ordered the said Johnson, as deputy, as aforesaid, to take said prisoners into his official charge, and remove them from the county jail in Young county, without giving the same his personal attention, or intrusting it to a fit and competent deputy. The said petition goes on further to show that in the removal so ordered and directed by the defendant, with the connivance of the said Johnson and the guards and deputies selected by the said Johnson, the said prisoners were attacked by a mob, who murdered the said Alfred Aaron Marlow; the petition concluding:

"Wherefore, in the matters and things hereinbefore recited, which led to the cruel and inhuman murder of the said Alfred Aaron Marlow, plaintiffs alleged that said William L. Cabell, marshal as aforesaid, acted wrongfully and negligently; and that by reason of such wrongful acts and negligence the said Alfred Aaron Marlow met his death."

From this it appears that the defendant Cabell is distinctly charged with default and negligence in the performance of his duty as United

States marshal, which default and neglect led and contributed to, if not entirely causing, the killing of Alfred Aaron Marlow, in this: (1) That knowing the danger attending the life and safe-keeping of said Marlow, a prisoner in his custody, he neglected to take measures for his protection; (2) that he knowingly intrusted the custody and safe-keeping of said Marlow to an unfit and improper person; (3) that knowing the unfit and unworthy character of Johnson, and well knowing that a dangerous and lawless element of the community was conspiring and contriving to injure and oppress said Marlow, and well knowing of the previous attack of said dangerous and lawless element upon the jail and the prisoners therein, and of the collusion of his deputies and guards therewith, he, the defendant, directed and permitted the said Johnson to remove said Marlow from the jail in Young county, without taking any measures to protect said Marlow in said removal. It seems clear that the defendant Cabell, as late United States marshal, while undoubtedly sued on account of the faults, negligence, and wrongful acts of his deputies and agents, is also sued for his own defaults and negligence. The question remaining is whether the defaults and negligence charged directly against the defendant are sufficient in connection with the other facts alleged to make him responsible for the unlawful killing of Alfred Aaron Marlow. The defendant, as United States marshal, certainly owed a duty in the premises to the said Marlow,—that of safe-keeping and protection from unlawful injury. The defendant's oath of office, his bond, and the necessary implications of the law, all point to such duty as imposed upon him. See Rev. St. U. S. §§ 782, 783, 5538. "Whenever the common law, a statute, a municipal by-law, or any other law, imposes on one a duty, if of a sort affecting the public within the principles of the criminal law, a breach of it is indictable, and a civil action will lie in favor of any person who has suffered specially therefrom." Bish. Non-Cont. Law, § 132, and cases there cited. "Commonly, where the law has cast a duty upon one to another, a simple neglect to discharge it, whereby the other has suffered injury, is actionable." Id. § 526. "When the injury proceeds from two causes operating together, the party putting in motion one of them is liable the same as though it was the sole cause. This is one form of a universal principle in law, that he who contributes to a wrong, either civil or criminal, is answerable as a doer. And it is immaterial to this proposition whether that to which he contributes is the volition of a responsible person or of an irresponsible one, or whether it is a mere inanimate force or a force in nature or a disease." Id. § 39, and cases there cited. That a United States marshal may take prisoners into his custody, permit them to be disarmed and shackled, and then negligently and knowingly deliver them over to incompetent deputies and the known hostility of mobs, without liability for his neglect of duty, is a proposition which we think cannot be sanctioned. Substantially, this is alleged against the defendant in this case.

The judgment of the circuit court, in sustaining the exception to the plaintiffs' second amended original petition, was, in our opinion, errone-

ous. The other grounds of exception are not urged, and, so far as the record shows, are not well taken. The judgment of the circuit court is reversed, with costs, and the cause is remanded, with instructions to overrule the exceptions to the plaintiffs' second amended original petition, and otherwise proceed in this cause according to law.

BRUCE, District Judge, (*dissenting.*) The right to maintain this action arises, if at all, under article 2899 of the Revised Statutes of the state of Texas, and not upon any act of congress authorizing an action for damages on account of injuries causing the death of any person. The supreme court of the state of Texas, in the case of *Hendrick* v. *Walton*, 69 Tex. 192, 6 S. W. Rep. 749, have held that this statute does not authorize an action against the principal for the act of his agent, and at page 197 the court say:

"Since, therefore, the language of our statute indicates that the legislature of our state did not mean to make persons responsible for the acts of their agents in these cases, except such as are specified in the first subdivison of the article cited, it is but reasonable to conclude that they intended to render other persons liable only for their own immediate acts."

The action, then, is given and survives the death of the injured person in the cases specified in the first subdivision, (which is as to common carriers;) but in the second subdivision, when the death of any person is caused by the wrongful act, negligence, unskillfulness, or default of another, the court holds the action is not authorized against the principal for the act of his agent. The general principle is that for tortious conduct, resulting in death, every one must be held responsible only for his own conduct, not that of his agent, nor, by the same rule, that of his servant. The action, then, is maintainable in the character of cases named in the statute, and this statute, being in derogation of the common law, is not to be construed to cover what is not fairly within its terms. The act was manifestly intended for common carriers, to secure greater care on their part as to the skillfulness and efficiency of their agents and servants, and was inspired, no doubt, by the desire to protect the traveling public. In the second paragraph, the words "agent" or "servants" are not employed, so the idea of holding persons responsible for the torts of their agents and servants is negatived, and there is no action maintainable under this act for negligence of agents and servants causing injuries from which death results, except as provided in the first paragraph. The right to maintain an action under this act is restricted to the cases named in the act, and, except in the case of common carriers, is for the wrongful act, negligence, and unskillfulness of the individual himself, and not for that of his agent or servant. It may also be observed that in some of the states the act differs from that of Texas, and gives to the representative of the deceased the same remedy which the deceased party would have had if the injury had not resulted in death; but such is not the statute we are considering, and to give it that effect would be to go beyond its terms.

The negligence here complained of, which resulted in the death of

Marlow, was the negligence of the deputy marshal, Johnson, in the performance of his official duty; and it may be a question whether the deputy, Johnson, was acting in the line of his official duty at all, so that the marshal can be held to be responsible as claimed here. But, aside from that, can the statute in question be construed to include a cause for alleged official negligence, such as is made in the plaintiffs' petition? It is said the complaint is not only of the negligence of the deputy marshal, Johnson, but that negligence is charged also upon the marshal himself, although he was not there at the time of the death of the prisoner, Marlow, and was not an actual participant in the violence resulting in the death. But it is charged in a somewhat elaborate statement of the facts and conditions leading up to the violent attack upon the prisoners in charge of the deputy marshal, Johnson, that the marshal knew, or will be held to have known, the condition of the public mind at the time; the danger of mob violence to which his prisoners were exposed; and that his deputy, Johnson, was a very unfit man for the execution of the duty with which he was charged; in fact, that he was in sympathy with the mob, and unfaithful to his trust. Concede that,—and it is stated strongly and fully,—and yet can it be held that this action here is maintainable against the marshal, upon his official bond, because his deputy betrayed his trust, or because the marshal was at fault, and did not use good judgment in the selection of his deputy to perform this duty? If an action is given on account of such wrongful conduct, negligence, or whatever it may be called, on the part of a United States marshal, then why not carry the principle further, and hold the appointing power of the marshal, if he—the marshal—be an improper man for the discharge of the important and delicate duties intrusted to him, responsible for making an improper selection for the discharge of such duties, where negligence in their performance results in the death of a party. The principle contended for is wrong in the application which is sought to be made of it, and the statute cannot fairly be held to mean more than that an action is given and may be maintained against persons for their own wrongful acts and negligences which are the immediate cause of the death of a party, and not the constructive, indirect, and remote cause.