SULLIVAN-SANFORD LUMBER COMPANY v. MRS. CLARA COOPER ET AL.

No. 2180. Decided January 24, 1912.

**1.—Death—Master and Servant—Negligence of Vice-Principal.**

A private corporation, not a carrier, is liable for death only when caused by its own negligence, not for that caused by the negligence or unskillfulness of its servant (Rev. Stats, art. 3017). And this is true though the negligence or unskillfulness causing the death was that of a servant whom the foreman, standing in the relation of vice-principal, had improperly set to discharge a service dangerous to others and for which he was incompetent. (Pp. 26-30.)

**2.—Same—Case Stated.**

A saw log in a lumber mill was held in position on the loader by mechanism operated by steam and controlled by a lever, beneath the floor but operated from above. The mill being stopped to repair a defect, deceased, by direction of the foreman of the mill company, was engaged in removing a metal plate in the floor alongside the log, held in position by bolts passing through the floor. A negro, unskilled in machinery and ignorant of the relation of its parts, was sent below by the foreman to remove the taps from the lower end

of such bolts. In so doing, by his unskillfulness or negligence, he came in contact with and moved a lever, admitting steam to the mechanism operating the loader and causing the log to be released and to fall upon and kill deceased. Held that, though the foreman stood in the relation of vice-principal to the mill company, and the negro was unfit to be selected for the dangerous service at which he was set, the mill company could not be held liable under the second section of article 3017, Rev. Stats., for injuries resulting in death. (Mr. Justice Ramsey dissenting.) (Pp. 24-30.)

### 3.—Same—Cases Discussed.

Hendricks v. Walton, 69 Texas, 197; Hargrave v. Vaughn & Cumming, 82 Texas, 350; Lipscomb v. Railway & Express Co., 95 Texas, 5; Missouri, K. & T. Ry. Co. v. Freeman, 97 Texas, 399, followed. Hugo, Schmeltzer & Co. v. Paiz, 104 Texas, 563, and Missouri, K. & T. Ry. Co. v. Wood, 95 Texas, 223, distinguished. (Pp. 26, 28, 29.)

Error to the Court of Civil Appeals, Sixth District, in an appeal from Morris County.

Mrs. Cooper and others sued the Lumber Company and had judgment, which was affirmed on defendant's appeal (59 Texas Civ. App., 536). Appellant obtained writ of error.

*Harry P. Lawther* and *Chas. S. Todd,* for plaintiff in error.— Where several servants of the common master are all engaged in the same work of repair they are fellow servants with each other, and assume the risk of each other's negligence. 2 Labatt, Master and Servant, sec. 622; Murphy v. Boston & A. R. Co., 88 N. Y., 146, 42 Am., 240; Rogers L. & Mach. Works v. Hand, 50 N. J. L., 464; Meeker v. C. R. Remington Sons Co., 53 N. Y., App. Div., 592; Wellman v. Oregon Short Line, etc., R. Co., 21 Ore., 530; Holtz v. Great N. R. Co., 69 Minn., 524; Gibson v. Northern C. R. Co., 22 Hun, 289; Porter v. Silver Creek M. Coal Co., 84 Wis., 418; Reed v. Moore, 82 C. C. A., 439; Maloney v. Florence, etc., R. Co., 89 Pac., 649; McClure v. Detroit So. R. Co., 109 N. W., 847; Hayes v. Jersey City R. Co., 64 Atl., 119; Cavanaugh v. Central Block Coal Co., 109 N. W., 303; Guilsmartin v. Solvy Process Co., 101 N. Y. Supp., 118.

The servant engaged in repair work, or assisting in repair work, assumes the risk. Throckmorton v. Railway Co., 14 Texas Civ. App., 222; Allen v. Railway Co., 14 Texas Civ. App., 344; Dartmouth Spinning Co. v. Achard, 84 Ga., 14; 6 L. R. A., 190; Finlayson v. Utica M. & Milling Co., 14 C. C. A. 492; G. C. & S. F. Ry. Co. v. Jackson, 12 C. C. A., 507; 1 Labatt, Master and Servant, secs. 268-69; 4 Thompson on Negligence, sec. 5255.

Where the injured employe is also the repair man, and both negligent and the injured servant were engaged in repair work, the master is not liable. 26 Cyc., page 1335; 2 Labatt, Master and Servant, sec. 622; G. C. & S. F. Ry. Co. v. Kizziah, 86 Texas, 81; Seaver v Boston, etc., Ry. Co., 14 Gray (Mass.), 466; Thorn v. Pittard, 10 C. C. A., 352.

The duty to keep in suitable repair the premises, machinery, tools and appliances which the master furnishes to his servants is an absolute or primary duty, and the servant charged by the master with such duty becomes a vice-principal. 4 Thompson on Negligence, secs. 4926-4929; H. & T. C. Ry. Co. v. Marcelles, 59 Texas, 337; 26 Cyc.,

page 1332 et seq.; Railway Co. v. Ferch, 18 Texas Civ. App., 46, citing 3 Elliott, R. R., sec. 1318; Railway Co. v. Bond, 70 S. W., 930.

One occupying the position of vice-principal cannot recover from the master because of the negligence of another occupying the same grade. Sherrin v. St. Joseph & St. L. R. Co., 103 Mo. 378.

Where the servant has knowledge, or equal means of knowledge, with the master, he assumes the risk. Ft. Worth Light & Power Co. v. Moore, 118 S. W., 831; Western U. Tel. & Tel. Co. v. Burton, 53 Texas Civ. App., 378; Kansas City S. Ry. Co. v. Williams, 111 S. W., 196; St. L. S. W. Ry. Co. v. Hynson, 101 Texas, 546-47; H. & T. C. Ry. Co. v. Strycharski, 6 Texas Civ. App., 555; Brown v. Miller, 62 S. W., 549; Railway Co. v. Martin, 21 Texas Civ. App., 207; Summerfield v. Mayton, 59 S. W., 168; Bonnett v. G. H. & S. A. Ry., 31 S. W., 707; Railway Co. v. Finch, 86 Texas, 96; T. & P. Ry. Co. v. Bradford, 66 Texas, 732; 4 Thompson on Negligence, secs. 4643-44; 1 Labatt, Master and Servant, sec. 405, authorities cited.

The obligation of the master to provide a reasonably safe place for his servant to work has no application to the safety or condition of the thing the servant is employed to repair or complete. Armour v. Hahn, 111 U. S., 313; Armour & Co. v. Dumas, 95 S. W. 710, 46 Texas Civ. App., 36; T. & P. Ry. Co. v. Halm, 93 Texas, 651; A. T. & S. F. Ry. Co. v. Meyers, 22 C. C. A., 268; City of Minneapolis v. Lunden, 7 C C. A., 344; Allen v. G. H. & S. A. Ry. Co., 14 Texas Civ. App., 344, 69 S. W., 174; Richardson v. Anglo-Am. Prov. Co., 72 Ill. App., 77; Hollerhan v. Union Iron & Foundry Co., 355 S. W., 260; 1 Labatt, Master and Servant, sec. 269, 2 Id., sec. 588.

The statute giving a cause of action for death does not extend to acts of agents of persons other than the proprietor or charterer, or hirer of any railroad, steamboat, stage coach, or other vehicle for the conveyance of goods and passengers, or the receiver or receivers or other persons in charge or control of any railroad. Rev. Stats., 1895, art. 3017, sec. 2; Shippers Comp. & Warehouse Co. v. Davidson, 35 Texas Civ. App., 558; Fisher v. Telephone Co., 34 Texas Civ. App., 308; Cole v. Parker, 27 Texas Civ. App., 563; Lipscomb v. Railway Co., 64 S. W., 932; Hargreaves v. Vaughn, 82 Texas, 347; Hendrick v. Walton, 69 Texas, 192; Fleming v. Tex. Loan Agency, 87 Texas, 241.

*S. J. Robinson, J. M. Henderson, Hart, Mahaffey & Thomas,* and *Gregory, Batts & Brooks,* for defendants in error.—When Wilson undertook to transfer Barlow to the service in which he was engaged when Cooper was killed, he was exercising a non-assignable duty of his master; and it became his duty to use ordinary care to ascertain Barlow's fitness for the position thus assigned. He absolutely failed to do this. Labatt, Mast. & Serv., sec. 572; Blackman v. Thompson-Houston Elec. Co., 29 S. E., 120; Thompson on Neg., sec. 4962; Railway Co. v. Martinez, 57 S. W., 689; Postal Tel. Co. v. Coote, 57 S. W., 913; Labatt, Mast. & Serv., p. 421.

That the jury were authorized to conclude that Cooper's death was the result of the negligence of Wilson is sustained by the following authorities: Mexican, etc., Ry. Co. v. Mussett, 86 Texas, 708; Jackson v. Railway Co., 90 Texas, 373; Railway Co. v. Sweeney, 14

Texas Civ. App., 219; Railway Co. v. Hennessey, 20 Texas Civ. App., 319; Railway Co. v. McHale, 105 S. W., 1149.

Mr. Chief Justice Brown delivered the opinion of the court.

Plaintiff in error, a private corporation, was engaged in operating a lumber mill, and R. F. Cooper, the husband of Clara Cooper and father of the other defendants in error, was on the 11th day of November, 1907, in the employ of the said corporation and on the date named was killed while engaged in the services for which he was employed. · This suit was instituted in the District Court of Morris County against the plaintiff in error to recover damages for the death of said Cooper. The District Court gave judgment against the plaintiff in error, which was affirmed by the Honorable Court of Civil Appeals. The ground of negligence was alleged as follows:

"The ground of negligence, submitted by the court to the jury, is alleged to be the act of appellant's foreman, a vice-principal, in knowingly directing an incompetent and inexperienced person, ignorant of the character and use of the machinery about and amidst which he was instructed to work and come in contact, to go underneath the floor and unscrew the end nuts and bolts of the broken floor-plate which the deceased at the time on the first floor was endeavoring to repair. It was alleged that while the person, as directed by the foreman, was endeavoring to do the work assigned him, and while necessarily climbing around to do such work, he came in contact with the end of the lever next to the valve which operates the loader, and thereby let steam escape into the cylinder and operate the arms of the loader and throw a heavy gum sawlog, which was on the loader at the time, upon the deceased, killing him."

The facts, in substance, are: "E. B. Wilson at the time was the foreman, having authority from and charged with the duty by appellant to direct and control and have full charge and supervision of the operations and work of all the other employes at the mill, and to employ hands and to discharge hands, but subject to the disapproval of the president of the company. This plant was made up of modern and complicated machinery propelled by steam. Among the contrivances used to save labor and accelerate its business of manufacturing lumber were a steam loader and steam tooth-bar, called in the evidence a 'nigger.' The former (the loader) was made up of, among other things, a number of arms, or standards, attached to a shaft which rested alongside, near and parallel with the saw carriage track, at the foot of an inclined plane, called a 'skidway.' The arms, or standards, normally stood rigid and upright, and were used to catch and hold logs which rolled down the skidway and to keep them from rolling on the carriage or carriage track until such time as in the operation of the mill a log was needed upon the carriage, when, by means of the application of steam power to the machinery in part making up the construction of the loader, the arms, or standards, were lowered and the log rolled on to the carriage. The steam nigger consisted of an upright bar provided with teeth, which worked upward and downward through the floor, and near the carriage track, and between the carriage track and loader; was propelled by steam

power, and used for turning and adjusting logs while being sawed, after they had been placed upon the carriage. The machinery by which these instrumentalities were operated was situated underneath the floor upon which rested the carriage track, and the steam used in its operation was applied through valves to which levers were connected; the steam, by means of the valves, being allowed to pass into the cylinders. One of such cylinders operated the loader, and two others operated the nigger. The levers connected with the steam valves, at least the loader levers, were in turn, connected with uprights which protruded a short distance through the floor at the sawyer's stand and were provided with stirrups, so that steam could be applied to the loader or nigger by slight pressure by the sawyer's or operator's foot. The machinery which made up the construction of these instrumentalities was complex, and the relation of one part to another was nicely adjusted, and it was capable of being quickly and easily operated by means of slight pressure applied to the levers, through the uprights projecting through the floor at the sawyer's or operator's stand. Steam was applied to the machinery operating the loader by means of a lever about sixteen feet in length which was suspended underneath the floor, from a fulcrum, about its center. One end of the lever was attached to a valve through which steam escaped into the cylinder operating the loader, while to the other end was attached an upright protruding through the floor, to which was attached a stirrup as a means of its operation. The arms, or standards, were lowered by the application of steam power, and upon relaxation of the pressure assumed and retained a normal rigid and upright position. This lever was above and about four feet back from the rear, and about seven feet from the front nigger cylinder. On the day of the injury in suit the floor-plate of the tooth-bar, or nigger, broke, and Wilson, the foreman of the mill, as was his duty, caused the mill to be shut down and not longer for the time operated, and called and directed the deceased, as was his duty, to repair it. At this time a large gum sawlog was resting in the arms of the loader, and deceased, as was the proper way for the performance of his duty, stooped down between the log, which was about two feet distant in front of him, and the carriage track, to make the repairs, and was unscrewing the nuts from the bolts on the floor-plate. Deceased had taken about two bolts and had started to take out another when Wilson, the foreman, directed Ned Barlow, an employe of the mill, to go below the floor and unscrew the nuts from the ends of the bolts which were underneath, and Barlow obeyed the instructions of the foreman. Barlow was a block-setter at the mill, but was not a machinist, and, according to his own evidence, did not know anything about machinery and had never before done that particular kind of work in such place as directed, and did not know how those levers operated when he went down under there, and did not know that if he came in contact with any of those levers it would throw the steam on, and did not know at that time what effect it would have to touch any of those levers, and did not know anything of the machinery that was down under that place. While deceased was sitting on the edge of the log-deck and stooping over removing the last nut from

the floor-plate, the cylinder operating the loader suddenly took steam and threw the log from the deck on him before he could move out of its way, thereby instantly causing his death. The evidence is sufficient to warrant the inference and finding, which is involved in the general verdict of the jury and which we assume, in support of the verdict, to be true, that Ned Barlow, while doing the work assigned him by the foreman, in moving his position from one place to another underneath and in necessarily swinging around a post to get in position to do his work underneath, struck his shoulder against the end of the lever next to the valve which operates the loader, and thereby let steam escape into the cylinder and operate the arms of the loader and throw the log upon deceased. Wilson, the foreman, at the time he sent Barlow beneath among the machinery knew, it appears according to his own testimony, that Barlow was not a competent and experienced person to do such work among such a complex and delicate situation of machinery as was there and of which Wilson knew."

The action is based upon this proviso of Article 3017, Batts' Revised Statutes, as follows:

"An action for actual damages on account of injuries causing the death of any person may be brought in the following cases:

"2. When the death of any person is caused by the wrongful act, negligence, unskillfulness or default of another."

Since at common law this action could not have been maintained against a natural person, nor against a corporation, it follows that the judgment must be tested by the terms of Article 3017, above copied.

We are so accustomed to consider like questions under the law which makes the employer responsible for the negligence of the servant that it will aid in the solution of the various questions which are involved to determine first the extent of responsibility under this statute of the person for the acts of others by which death is caused.

Does the rule *respondeat superior* apply in this class of cases? We here copy the entire Article 3017.

"An action for actual damages on account of injuries causing the death of any person may be brought in the following cases:

"1. When the death of any person is caused by the negligence or carelessness of the proprietor, owner, charterer, hirer of any railroad, steamboat, stage coach, or other vehicle for the conveyance of goods or passengers, or by the unfitness, negligence or carelessness of their servants or agents; when the death of any person is caused by the negligence or carelessness of the receiver or receivers or other person or persons in charge or control of any railroad, their servants or agents, and the liability of receivers shall extend to cases in which the death may be caused by reason of the bad or unsafe condition of the railroad or machinery or other reason or cause by which an action may be brought for damages on account of injuries, the same as if said railroad were being operated by the railroad company.

"2. When the death of any person is caused by the wrongful act, negligence, unskillfulness or default of another."

It will be observed that the first subdivision of the article gives a

right of action for the death of a person caused by the negligence or carelessness of the proprietor, owner, etc., of a railroad, etc., or "by the unfitness, negligence or carelessness of their servants or agents." The doctrine of *respondeat superior* is applicable in that class of cases by the language of the law. The second subdivision of the article omits "their servants or agents," but expresses the liability thus: "When the death of any person is caused by the wrongful act, etc., of another." Showing plainly that in the latter class of cases liability is predicated alone upon the act of the person to be charged, excluding liability for the acts of his agents and servants. Hendrick v. Walton, 69 Texas, 197.

In the case just cited this court said: "Since, therefore, the language of our statute indicates that the Legislature of our State did not mean to make persons responsible for the acts of their agents in these cases, except such as are specified in the first subdivision of the article cited, it is but reasonable to conclude that they intended to render other persons liable only for their own immediate acts. Several States, as has been seen, restrict the liability altogether to common carriers; and our Legislature, as to others, may have well considered that a greater degree of culpability attaches to one who does a wrongful act himself, than to the principal when the act is done by his agent, and may have determined therefore to confer no right of action in the latter case."

In Hargrave v. Vaughn & Cumming, 82 Texas, 350, this court approved that doctrine in these terms: "It is evident, under the averments of the petition, that Vaughn and Cumming were not responsible for any injury to plaintiffs resulting from the death of the child, for it is clear that the statutes on which such actions are based would not render them liable to such an action for the negligence of their agent, though the agent may be liable. (Hendrick v. Walton, 69 Texas, 192.)" In that case the action was by the father of a child whose death was caused by the negligence of a prescription clerk of a firm of apothecaries in negligently filling a prescription with poison.

In Lipscomb v. Railway & Express Co., 95 Texas, 5, 55 L. R. A., 869, 93 Am. St., 804, the same persons represented a railroad company and an express company, and, in performing the duty of guarding the property of both corporations, negligently killed one who was mistaken for a burglar. It was held that the express company was not liable for the negligent act of the employe, because its liability depended upon the second subdivision of the article copied above, while the railroad company was held liable for the same negligent act, because its liability was fixed by the first subdivision thereof.

The last cited case places beyond the domain of legitimate discussion the proposition that this plaintiff in error cannot be held liable for the death if caused by the negligent act of a servant.

It is settled in this State that private corporations are embraced in the terms of the second subdivision of the Article of the Statute under review. As interpreted by our decisions the statute would read thus:

"An action for actual damages on account of injuries causing the death of any person may be brought in the following cases:

"2. When the death of any person is caused by the wrongful act, negligence, unskillfulness or default of another person or a private corporation."

The effect is to charge the corporation with liability for death caused by the wrongful act, negligence, unskillfulness or default of its vice-principal, for in law such officer or agent is the corporation when exercising its authority. We conclude that Wilson was the vice-principal of the plaintiff in error on this occasion, and, for his act done for it as such vice-principal, the corporation is liable to the same extent that Wilson would be if he had owned the mill and had done the same acts for himself. We will assume that if the acts of Ned Barlow, done in removing the taps from the bolts, had caused the death of Cooper, it would have charged the corporation with responsibility for such death, because it would have been negligence in Wilson to do an act which would, however done, have caused the log to roll down upon Cooper. But it was not the act which Wilson authorized Barlow to do, but the negligent striking of a lever which had no connection with the removal of the taps from the bolts. If Wilson had told Barlow to move the lever, then there would have been liability, because the act of moving the lever necessarily released the log which caused the death of Cooper. During the present term of the court we decided the case of Hugo-Schmeltzer & Co. v. Frank Paiz, et al. (104 Texas, 563), which illustrates this distinction. The vice-principal of the corporation was present and directing employes in the use of an elevator, Paiz being one of the servants. The elevator became fastened in such a way that to release it, except in a certain manner, would necessarily cause it to shoot up to the top. The vice-principal ordered the elevator to be released in a negligent manner, which was done as directed, and it was suddenly and very rapidly carried up, catching Paiz's leg and thus injuring him. There was no negligence of the servant in the manner of releasing the elevator, but the negligence consisted in the ordering it to be so released. The death was caused by the negligent act of the corporation within the terms of the law. So, if Wilson had ordered Barlow to move the lever the cases would be on all fours, because the moving of the lever necessarily released the log and the negligence would be that of the corporation. The distinction is that in that case Paiz did what he was ordered to do in the manner directed; in this case Barlow did negligently what he was not directed to do, which caused the death. It was the negligence of Barlow and therefore not embraced in the statute.

The distinction which we are endeavoring to make plain between liability under the first and second subdivision of Article 3017 is forcibly and clearly stated by Judge Williams in Missouri, K. & T. Ry. Co. v. Freeman, 97 Texas, 399. It is sufficient to say that the action was to recover for the death of Freeman caused by small-pox being communicated to him by a servant employed at a hospital camp for employes of the road afflicted with that disease. The servant negligently went into Greenville and communicated the disease to

Freeman, causing his death. This court held that the railroad company was not liable for the death of Freeman, because the negligence that caused the death was not that of the corporation. There was a dissent in that case, but the difference of opinion was as to whether the first or second paragraph of Article 3017 applied. The writer of this opinion contended that the first paragraph prescribed liability in that case. Contrasting the last named case with Missouri, K. & T. Co. v. Wood, 95 Texas, 223, 56 L. A. R., 592, 93 Am. St., 834, in which the action was for injury (not resulting in death), caused by the negligence of the person in charge of the same camp, by which a delirious patient was permitted to escape and wander into the same town, communicating small-pox to Wood and family, it was held that the railroad company was liable for the negligence of the employe because the rule of *respondeat superior* applied.

The act of Barlow in negligently striking the lever which released the log that killed Cooper was not the act of Wilson and would not render him liable personally if he had owned the mill, therefore, it was not the act of Wilson as vice-principal of the plaintiff, hence the corporation is not liable for the death of Cooper.

In Hendricks v. Walton, supra, Judge Gaines says: "We have no authoritative decision upon the point in this State, and there being no statute exactly like ours which we have been able to find, it is not likely the question has been decided in the courts of any other State."

We have found but one case directly in point. The statute of Arizona is in the very same words as the second paragraph of our statute, and in Don Yan v. Ah You, 4 Ariz., 109, the Supreme Court of that State said: "The right of action in this case, if given at all, is given by the second clause above quoted. The omission in that clause to impose liability for negligence, etc., of servants or agents is significant. The statute clearly makes a classification of the cases in which a right of action is given, and the only distinction between the two classes is, that in one class persons are liable for their own, and as well the negligence of their servants and agents; while in the other persons are liable for their own neglect or wrongful act only. To insert into the second clause by construction the provisions that those included in that class shall be liable for their own negligence and that of their servants and agents at once destroys the classification which was so evidently intended by the Legislature, and practically eliminates the first clause of the section from the statute, for then those mentioned in the first clause would be included within those in the second." That decision is in harmony with ours.

It is said that the negro Barlow was incompetent and unfit to be sent into that place of danger. Assuming that to be true, it is evident that if the corporation is not liable for the negligence of Barlow, it would not be liable for his unskillfulness, for both terms in the statute are expressed to be "of another," that is the unskillfulness or negligence of Wilson, and must be of equal force in fixing the responsibility of the person to be charged. At common law the master owes the duty to his employes to employ competent servants, and if Cooper had been injured, but not killed, there might be liability on account of the negligence or unskillfulness of Barlow; but the

statute does not so provide. We are not called upon to assign a sound reason for the difference between cases of injury and death cases; that the law is so written is sufficient for this court.

The judgments of the District Court and Court of Civil Appeals are reversed and judgment here rendered for plaintiff in error.

Mr. Justice Ramsey, dissenting, filed the following opinion:

The facts of the case are clearly and fairly stated in the opinion of the majority of the court and need not be here re-stated except as incidentally necessary to a proper understanding of my views.

It is conceded that under the statute appellant is not liable unless it comes clearly within subdivision 2 of Article 3017 of our Revised Statutes, and unless it was negligent in respect to some matter or thing which it was itself, by its charter obligations, committed to perform. Every corporation, as I believe, doing business in this State is responsible for damages resulting in death where its negligence was in respect to some non-delegable matter and its conduct is in violation of the obligations and duties which in its creation the law imposes upon it. Among the obligations, it seems to me clear, are that such master shall provide a reasonably safe place in which the servant shall perform his work and reasonably safe instrumentalities and appliances with which its work shall be performed, and, further, that it shall not be so negligent in the employment of incompetent servants, so that growing out of such negligence damages or death may result to other employes. This doctrine seems to me to be not only sound in legal reason, but seems, in substance, at least, to have received the approval of Mr. LaBatt in his valuable work on Master & Servant, where, in Vol. 1, page 390, Sec. 177, he uses this language:

"The obligations of a master to see that the servants hired by him possess the qualifications, mental, moral, and physical, which will enable them to perform their duties without exposing themselves and their employees to greater dangers than the work necessarily entails, are, in their broad features, similar to the obligations which are incumbent upon him with regard to the other agencies of his business. It is manifest, however, that, in their specific application to human beings, the general principles which define the nature and extent of those obligations must assume a shape somewhat different from that which they bear in their relation to the lower animals, or to inorganic instrumentalities. It is, in fact, apparent that the duty of a master to use care in hiring servants is very closely associated with, if not a special form of, his duty to adopt a safe system in the conduct of his business; that is to say, the duty of seeing that the unreasoning agencies used by him perform their functions."

In the case of Donnelly v. Booth Bros. & H. I. Granite Co., 90 Me. 110, 37 Atl. 874, it is said: "The law will not allow an employer, whose duty it is to provide reasonably safe appliances, to escape liability by employing incompetent or unsuitable persons to discharge it."

In the case of Stewart v. New York, O. & W. R. Co., 28 N. Y. S. R. 215, 8 N. Y. Supp., 19, it was held negligence to intrust the work of

thawing dynamite to inexperienced workmen who did not understand the danger involved in applying the heat in a certain manner. These facts manifestly suggest the conception of an unsafe method of work, the unsafety of which results from the inefficiency of the person by whom it is done.

It has been held in this State that a waterworks company is liable for the damages proximately resulting from the fall of a water tower negligently constructed on its own premises. (Rigdon v. Temple Waterworks Co., 11 Texas Civ. App., 542, 32 S. W. 828.)

There can be no doubt since the case of Fleming v. Texas Loan Agency, 87 Texas, 238, 26 L. R. A., 250, that the word "person" in subdivision 2 of Article 3017, includes private corporations. The verdict of the jury in this case affirms the fact that the company was negligent in employing Barlow, through whose action and conduct Cooper lost his life. It appears that the machinery by which the instrumentalities operated the mill was situated underneath the floor, and that the construction of same was complex, the relation of one part to another nicely adjusted, and capable of being quickly and easily operated by means of a very slight pressure applied to the levers. It is also undenied and undoubtedly true that Barlow, while necessarily climbing around to do such work as he was sent to do, in ignorance of the danger and without conscious negligence, came in contact with the end of the lever next to the valve which operates the loader. The recovery, therefore, in this case was not allowed and ought not to have been allowed for the mere negligence of Barlow; but it reaches far beyond that and rests upon the negligence of the principal in employing a man in such a task as Barlow was sent to do, who was unacquainted with the dangerous machinery in and around which he was climbing and unmindful, and perhaps heedless, of death that might result from his unconscious interference with it. It ought to have and the jury were justified in holding that such facts were known to or reasonably within the contemplation of Wilson, and that in sending this unlearned, ignorant, negro stripling away from the work with which he was acquainted and among other machinery where the slightest misstep might bring some portion of his body in contact with the lever that would spell death of those above, the deceased, in the nature of things, had no chance to protect himself against such a misadventure. The opinion of the Chief Justice recognizes the fact that Wilson was a vice-principal and concedes that, if the death of Cooper had resulted from his removing the taps from the bolts, the company would have been charged with responsibility for such death; because, as is stated in the opinion, it would be negligence on the part of Wilson to do an act which would, however done, have caused the log to roll down upon Cooper. I am not sure but that goes further in the way of attaching responsibility to the appellant than I would go. I think it would be doubtful whether, for the mere act on the part of Barlow in doing the work which he was requested to do, which caused Cooper's death, a recovery could be had; but, as I understand the question and from my viewpoint, it seems demonstrably clear that where, with knowledge of the danger and intricate arrangement of the machinery, its delicate bal-

ance, the ignorance of its servant, his lack of acquaintance and familiarity with such machinery, and with knowledge that such servant may unconsciously by an unthoughted and inconsidered step send a fellow-workman to eternity, it ought not to be the law in Texas, and, in my judgment, it is not the law, that the company for such an act of its managing officer can escape liability. With this negro, ignorant of the machinery, immature in years, and uninstructed by his vice-principal that the place where he was sent was as full of danger to Cooper as if the place where he was sent had been a powder house and he carelessly caused an explosion,—if, as Mr. LaBatt says, the duty of using care to employ suitable servants is analogous to the duty of the master to provide safe machinery,—why should a recovery in this case be denied? Undoubtedly if the machinery had been defective and this fact had been unknown to Cooper and his death had been caused by such defective machinery, a recovery would be sustained. Why is it not true that recovery would be sustained when, not an appliance of wood and mortar was defective, but a negligent, unskillful, ignorant and unlearned servant, in respect to whose employment the master was negligent, is the occasion of the death.

These views might be elaborated at greater length, but what is said will indicate the grounds of difference with my brethren, and, in some measure, at least, will illustrate the reasons which I believe sustain them.

*Reversed and rendered for plaintiff in error.*