WILLIAMS et al. v. COCA-COLA CO.

(Court of Civil Appeals of Texas. San Antonio. Oct. 30, 1912.)

1. DEATH (§ 9*) — LIABILITY OF CORPORATIONS.

Right of action against a private corporation for wrongful death exists only under Rev. St. 1895, art. 3017.

[Ed. Note.—For other cases, see Death, Cent. Dig. § 11; Dec. Dig. § 9.*]

2. DEATH (§ 33*) — LIABILITY OF CORPORATIONS—"ANOTHER."

The word "another," as used in Rev. St. 1895, art. 3017, which gives a right of action for death caused by the wrongful act, etc., of another, means another person, and includes private corporations.

[Ed. Note.—For other cases, see Death, Cent. Dig. § 49; Dec. Dig. § 33.*

For other definitions, see Words and Phrases, vol. 1, pp. 406, 407.]

3. MASTER AND SERVANT (§ 189*)—VICE PRINCIPALS—EXISTENCE OF RELATION.

A foreman of a factory in full charge thereof, in the absence of the manager, was a vice principal as concerns the liability of the common employer for injury to a factory hand resulting from an explosion negligently caused by such foreman.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 427–435, 437–448; Dec. Dig. § 189.*]

4. MASTER AND SERVANT (§ 187*)—VICE PRINCIPALS.

The negligent act of a vice principal in a corporation's service in rendering a place of work unsafe is the act of the corporation.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 422–426; Dec. Dig. § 187.*]

5. APPEAL AND ERROR (§ 1036*)—DEFECT OF PARTIES—RIGHT TO COMPLAIN.

On appeal by a widow and children from a judgment for their decedent's negligent death, they cannot complain because decedent's mother was not made a party, though defendant might have complained had judgment gone against it.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4069–4074; Dec. Dig. § 1036.*]

---

Appeal from District Court, Dallas County; Kenneth Foree, Judge.

Action by Lurena Williams and others against the Coca-Cola Company. Judgment for defendant, and plaintiffs appeal. Reversed and remanded.

Ed Sewell, Claude Westerfeldt, and Carden, Starling, Carden & Hemphill, all of Dallas, for appellants. Smith, Robertson & Robertson, of Dallas, for appellee.

MOURSUND, J. Lurena Williams, widow of Gardner Williams, in her own behalf and as next friend of her minor children, Lutenner Williams, Robert Lee Williams, and Leon Williams, sued appellee, a corporation, to recover damages for personal injuries sustained by said Gardner Williams, which resulted in his death.

The petition upon which plaintiff went to trial charged defendant corporation, its agents, servants, and officers with negligently causing the death of Gardner Williams, an employé; it being alleged that the foreman of the company applied a lighted match to the bunghole of a barrel containing an inflammable and combustible liquid, thereby causing an explosion which threw the burning liquid on Williams, inflicting very painful and serious injuries from which he died. The specific acts of negligence charged were (1) that they permitted matches and fire to be brought about the inflammable and combustible liquid, the explosion of which caused the death of Williams, and in not warning him of the character of said liquids; (2) that they struck matches and applied same to the bunghole of the barrel containing such inflammable and combustible ingredients, and in not warning Williams that the foreman was going to strike said match; (3) that they kept inflammable and combustible liquids in and around said premises, in barrels and other containers with open bungholes, whereby the same could easily ignite and explode. Defendant answered with demurrer, general denial, pleas of assumed risk, and contributory negligence. During the trial it developed that Gardner Williams' mother, who was not a party to the suit, was still living. After plaintiffs had introduced their evidence, a verdict was instructed for defendant, and judgment entered accordingly, from which plaintiffs appealed.

No questions are raised on this appeal with regard to the pleadings or the admission of evidence, and, in order that the evidence upon which the trial court instructed a verdict for defendant may be kept in mind, we make the following brief summary of the evidence adduced by plaintiffs, which, for the purposes of this appeal, must be taken as true:

### Summary of Evidence.

Appellee, the Coca-Cola Company, is a corporation, whose president resides in Atlanta, Ga. It maintained in the city of Dallas a plant for the manufacture of coco-cola, in which about six men were employed besides the foreman. Gardner Williams, at the time of the injuries resulting in his death, had been working in said factory for about 10 months. He was an ordinary factory hand. D. B. Candler was manager of the Dallas plant, but was not in the city at the time Williams was injured, and had been gone for a week. Gordan J. Van Winkle, who was foreman at that time, was in full charge of the plant. He had charge of the shipping, receiving, and also the manufacturing. It was his duty to see that the whole plant was run as it should be, and he was responsible to the company for the whole factory, having the entire management and control, with authority to employ and discharge help, and could have discharged Williams if he had not obeyed his instructions. The material from which coca-cola was manufactured was received in iron drums and wooden containers; some of it being kept in the basement and some on the second floor. No one knew what the barrels contained except the manager and the foreman. Some of the material was combustible, and this was kept in the basement. The mixing tanks were kept on the first floor, and the material was prepared on the second floor and poured into the mixers; the material from the basement being taken up in the original containers by means of an elevator. A few days before the explosion resulting in the injuries to Williams, a barrel, which when full contained about 60 gallons, had been partially filled on the second floor with a mixture styled "7X," made by mixing 7 and 9, two ingredients kept in the basement. Van Winkle did not know who assisted him in making this particular barrel of 7X, but was sure he had charge of the mixing of it. No one at the plant knew the properties of 7X except he and the manager. (Van Winkle testified that the employés knew one of the ingredients of 7X, but not the other, but he did not know whether they knew it was combustible when mixed with the other, nor whether Williams knew the mixture was combustible.) The barrel was an oak barrel, shaped like a common barrel, having a bunghole. The contents were drawn from it by means of a syphon. The employés were starting to make a batch of coca-cola, and Van Winkle wanted to find out how much of the 7X mixture was in the barrel. He was standing at the side of the barrel, near the bunghole, and Williams was standing to his right at the end of the barrel, with his face towards Van Winkle. Van Winkle struck a match to see how much liquid was in the barrel, and, when he held the match so the light would shine into the bunghole, the barrel exploded like a barrel of gasoline. The contents were blown out at the end where Williams was standing, and he was covered with the burning liquid. The fire-

was burning in a space of eight or ten feet, about as high or higher than a man's head. Williams was very badly burned before his comrades could get his clothes off, and died a week later from the effects of the burns. One witness testified the explosion occurred as soon as the match was struck. One of the three employés who were witnesses testified he knew the mixture contained alcohol, one testified it contained what they called "7X alcohol," and the other testified it contained extract.

### Conclusions of Law.

[1, 2] An action against a private corporation to recover damages for the death of a person can only be maintained by reason of the provisions of article 3017 of the Revised Statutes, reading as follows: "An action for actual damages on account of injuries causing the death of any person may be brought in the following cases: * * * (2) When the death of any person is caused by the wrongful act, negligence, unskillfulness or default of another." It is well settled that the word "another," as used in this statute, means another person, and includes a private corporation. Fleming v. Texas Loan Agency, 87 Tex. 238, 27 S. W. 126, 26 L. R. A. 250; Sullivan Sanford Lumber Co. v. Cooper, 142 S. W. 1168; Commerce Cotton Co. v. Camp, 145 S. W. 902.

[3] In this case appellant bases his first assignment of error upon the action of the court in instructing a verdict for defendant, and by appropriate propositions makes two main contentions: (1) That Van Winkle was the vice principal or alter ego of the corporation and his negligent act was one for which the corporation is responsible. (2) That by leaving the barrel as the evidence shows it was left, combined with the act of Van Winkle, vice principal of the corporation, in striking a match, the place where Williams worked was rendered an unsafe place, and therefore the corporation is liable.

Appellee contends the action of the lower court in instructing a verdict for it was correct: (1) Because the negligence of Van Winkle was not the negligence of the corporation; (2) because a place is not an unsafe place to work when the act making same unsafe was the negligent act of the foreman.

The question of when a negligent act is the act of the corporation is one of considerable difficulty, and we have read with much interest the able brief of appellees on this subject, in which they contend that the true rule should be that only when the act complained of is attributable to the failure of a corporation to perform a nondelegable duty is it the act of the corporation. Appellee says the rule making the act of a vice principal as defined by our courts the act of the corporation places a greater liability on corporations than exists with regard to individuals, and that, as the liability

of a corporation is predicated upon the construction of the word "person" as including a corporation, any rule placing a greater degree of liability upon a corporation than a person is erroneous. On the other hand, the rule contended for by appellee in our opinion would place a greater degree of liability on the individual than on the corporation. In the case of Hugo-Schmeltzer Co. v. Paiz, 141 S. W. 521, our Supreme Court, after quoting the definition of a vice principal given in the case of Young v. Hahn, 96 Tex. 101, 70 S. W. 950, says: "If such servant, in addition to his authority to direct and supervise the work of those under him, has authority to hire and discharge such subordinate servants, he becomes a vice principal, and his 'wrongful act, negligence, unskillfulness or default' is that of the master. While the question whether a servant is a vice principal of the master is one partly of fact and partly of law, or a mixed question of law and fact, yet it is a proper subject to be submitted to the determination of the jury, and, when properly submitted to the jury as a determinable issue upon sufficient supporting or conflicting evidence, their finding is as conclusive upon that question as upon any other." In the case of Sullivan Sanford Lumber Co. v. Cooper, 142 S. W. 1171, the Supreme Court, after setting out the second paragraph of the death statute, says: "The effect is to charge the corporation with liability for death caused by the wrongful act, negligence, unskillfulness, or default of its vice principal, for in law such officer or agent is the corporation when exercising its authority. We conclude that Wilson was the vice principal of the plaintiff in error on this occasion, and for his act done for it as such vice principal the corporation is liable to the same extent that Wilson would be if he had owned the mill, and had done the same acts for himself." The case of Commerce Cotton Oil Co. v. Camp, 145 S. W. 902, was decided later than the foregoing cases, and there is an expression in the opinion which appellee contends cannot be reconciled with the opinion in said case of Sullivan-Sanford Lumber Co. v. Cooper. The statement referred to is obiter dictum, and, as the Sullivan Sanford Lumber Co. v. Cooper Case is approved in such opinion and referred to for a full discussion of this question, we think it was clearly not the intention of the court to modify the holding in said case.

[4] We conclude that, under the decisions of our highest court, it is now settled law that the negligent act of a vice principal is the act of the corporation and that it is idle to discuss the merits of the rule. Appellee contends the decision in the Hugo-Schmeltzer Case should be put upon the ground that an unsafe place to work was furnished the employés, and not upon the ground that the foreman was a vice princi-

pal, and his act was the act of the corporation. Appellee also contends that this case is to be distinguished from the Hugo-Schmeltzer Case on the question of unsafe place to work. That in this case the place was made unsafe by the act of the foreman, and the rule would apply that an unsafe place is not within the meaning of the law a place made unsafe by the act of a fellow servant. We fail to see any difference in principle· between a place made unsafe by servants obeying the orders of a foreman and a place made unsafe by the act of the foreman, and it occurs to us that the matter resolves itself back to the question whether the act making ʽthe place unsafe was done by a person standing in the place of the corporation, or by the direction of such a person, or merely by the act of a fellow servant. If a vice principal's act is the act of the corporation when he renders the place of work unsafe, the corporation is chargeable with the results.

In view of another trial, we deem it improper to discuss the evidence further than to say that in our opinion the evidence adduced by plaintiffs was sufficient to go to the jury, and the issues should have been submitted under appropriate instructions. Appellant's first and second assignments are therefore sustained.

[5] The third assignment is based upon the failure of the court to stop the proceedings in the case until the mother of the deceased could be made a party, when it developed upon the trial that she was living. If a judgment had been rendered against defendant in this case, it would have been necessary to reverse and remand because of the failure to make the mother of deceased a party plaintiff. San Antonio & A. P. Ry. Co. v. Mertink, 101 Tex. 165, 105 S. W. 485. However, it does not follow that plaintiffs, losing below, could have the case reversed for such failure to make parties, unless they requested leave to withdraw their announcement of ready for trial, and that they be granted a continuance to make the mother a party to the suit. A judgment against them would not conclude the rights of the mother, and they would be in no position to complain. This assignment is therefore overruled. Of course, upon another trial, the mother of deceased should be made a party.

For the error in instructing a verdict for defendant, the judgment is reversed and the case remanded.