AGUINAGA v. MEDINA VALLEY IRR. CO.
(No. 5302.)

(Court of Civil Appeals of Texas. San Antonio. June 10, 1914. On Motion for Rehearing, July 1, 1914.)

1. DEATH (§ 14*)—TRESPASSER OR INVITEE—LIABILITY.

Where defendant corporation, desiring to move certain laborers, including plaintiff and his wife, directed a teamster to transport their property with his team, and, when the women mounted the wagon on top of the property, defendant's superintendent ordered them off and directed them to stay off, but they afterwards got on the wagon again, and, by reason of the teamster's negligence or otherwise, plaintiff fell from the wagon and received injuries from which she died, she was a trespasser, and not an invitee, and defendant was therefore not liable.

[Ed. Note.—For other cases, see Death, Cent. Dig. § 16; Dec. Dig. § 14.*]

On Motion for Rehearing.

2. MASTER AND SERVANT (§ 185*)—INJURIES TO THIRD PERSONS—VICE PRINCIPAL.

Where defendant, desiring to move certain laborers and their property from one point to another, procured a team to transport the property, and defendant's superintendent, desiring to know why the wagon had not left, ordered M. to hurry the laborers, and then ordered the women to get out of the wagon and stay out, M., by reason of his orders, did not become a vice principal with authority thereafter to permit the women to ride in the wagon.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 385–421; Dec. Dig. § 185.*]

Appeal from District Court, Bexar County; S. G. Tayloe, Judge.

Action by Nicholas Aguinaga against the

Medina Valley Irrigation Company. Judgment for defendant, and plaintiff appeals. Affirmed.

J. D. Childs, of San Antonio, for appellant. Wm. Aubrey and West & McMillan, all of San Antonio, for appellee.

FLY, C. J. Appellant sued appellee to recover damages for the death of his wife, who it was alleged, fell or was thrown from a wagon, the property of appellee, either through the negligence of appellee in loading the wagon, in failing to have a brake on the same, in failing to have a light on the wagon, in failing to have a safe and careful driver, in overloading the wagon, in going over the road at night, or in failing to have the wagon go over another and safer road. Appellee pleaded a settlement with appellant, and, in a supplemental petition, J. D. Childs alleged that he was the attorney of appellant; that said settlement could not divest his interest in the cause of action; and that, if the settlement was fairly made, said Childs prayed "that the suit proceed in his name for the benefit of said J. D. Childs, and the said J. D. Childs comes now and joins in said petition and says that in the event that the jury and the court should decide that said settlement, as alleged in defendant's said answer, was honestly and fairly made, the interest of said J. D. Childs may be awarded" to him. The cause was submitted to a jury on 26 special issues, and upon the answers the court sought to render judgment that appellant take nothing for himself or for J. D. Childs; that appellee have a judgment for costs against appellant, "but not against the said J. D. Childs, and it further appearing to the court that J. D. Childs, attorney for the plaintiff, Nicholas Aguinaga, joins in the petition of said plaintiff and asks for recovery in this case, and the court being of the opinion that upon the facts, as found by the jury in this case, the law is with the defendant as against the said J. D. Childs, it is therefore ordered, adjudged, and decreed that the said J. D. Childs take nothing by this suit, but that the defendant have judgment in its favor against said J. D. Childs." J. D. Childs has not appealed to this court.

[1] In answer to the special issues, the jury found that a vice principal of appellee instructed the driver of the wagon to place appellant and wife, as well as their property, in the wagon and transport them from the "Big Dam" to the "Little Dam" by the road over which the wagon went; that appellee was not guilty of using the wagon without brake or light; that appellant suffered damages by the death of his wife in the sum of $1,000; that the driver was negligent in the manner in which he drove the team; that the vice principal was not guilty of negligence in sending the driver over the road that he used, and yet that the use of the road

was the direct and proximate cause of the death of appellant's wife; that appellant was intoxicated when he settled with appellee, but it was not of such a nature as to deprive him of his capacity to contract; that the deceased wife was not guilty of contributory negligence, but that appellant was guilty of contributory negligence; that, at the time of the death of his wife, she was riding in the wagon contrary to the orders of appellee, but neither she nor her husband knew it; that J. D. Childs was entitled to $250 if appellant was so intoxicated that he did not know what he was doing; that the consideration paid by appellant for the release was $500; that appellant and his wife assumed the risk that resulted in her death; that appellant was ordered, prior to the departure of the wagon from the "Big Dam," to get out and stay out of the wagon; that he did not know the road over which his wife was going; that, if appellant knew the road and that the wagon had no brakes, he was guilty of contributory negligence; that he did not know that either of these things might cause his wife's death; that he did not exercise ordinary care, if he knew the wagon had no brakes or lights and that the road to be traveled was rough; that he did not know that one of these things or a combination of them might cause his wife's death; that the wagon was not driven with ordinary care; that the deceased did not know about the road; that if she had known of that matter, as well as of the lack of lights and brakes, she would have been guilty of negligence in riding in the wagon.

The answers to the questions were inconsistent and contradictory, and it is not to be wondered at that either side of the controversy should have concluded that the verdict was in his favor. It is an object lesson on the submission of special issues to juries in every conceivable case in which they may be requested. In this case, a simple one, for damages for a death, more issues were submitted than would be required to settle an international dispute involving the honor and stability of governments, and the jury were lost amid a mass of interrogatories, and wandered without chart or compass through a jungle of facts, to them, as impenetrable as that from which has recently emerged the young, but noted, "River of Doubt," at least on the map of a distinguished American explorer and writer.

There are three assignments of error which are grouped, two of them to the effect that judgment should have been rendered in favor of appellant on the answers of the jury, and the other is that the verdict is "vague, inconsistent, conflicting, uncertain, and ambiguous." The assignments are overruled. The court should not have entertained for a moment a verdict that was "confusion worse confounded," and could not form the basis for any judgment, but the error is one that was harmless, as will hereinafter appear.

To cap the climax in this case, after the judgment was rendered, four of the jurors filed an affidavit that it was their intention to render a verdict in favor of the plaintiff; "that it was not our intention to find the plaintiff or his deceased wife guilty of any negligence in this matter, and it was our intention to find the defendant guilty of negligence in failing to have a brake and light upon said wagon and in routing it over the route in which it was routed, and in directing it to be done in said manner and in sending Clarence Chipman, who we find guilty of negligence in driving and operating." That affidavit forms a sadly ludicrous commentary on the Texas practice of submitting cases, without limit, on special issues. How the other eight jurors thought they were deciding does not appear from the record.

The evidence showed that Mitchell was what was known as a "corral boss," having charge, as the name would indicate, of a certain "corral" or pen and the teams connected therewith. It appeared from the evidence that Clarence Chipman, acting under instructions of Mitchell, went from the diversion, or little dam, to the large dam, which is about five miles above the small dam, to move some Mexicans and their personal property to the lower or diversion dam; that the women and children were permitted by Chipman to mount on top of the property in the wagon to ride down with it, in defiance of the rules of the corporation and orders of Ellwood, who was a superior to Mitchell, and the wife of appellant fell off and was killed. Mitchell, corral foreman, under the uncontroverted testimony, had no authority to authorize any one to ride on the wagon, and, when the Mexicans started on top of the wagon, they were ordered off by Ellwood and obeyed, but seem to have mounted it afterward. None of the testimony shows that any one who had the authority to do so ordered or permitted the wife of appellant to ride upon the wagon.

The liability of appellee could not arise in this case, no matter how defectively equipped the wagon may have been, nor how negligently it may have been driven, unless appellee ordered, invited, or permitted the wife of appellant to mount and ride upon the wagon. It could not, as the law then existed, be held liable for the death of any person unless it was caused by its own "wrongful act, negligence, unskillfulness, or default." Its liability could not be brought about by the "unfitness, negligence, or carelessness of its servants or agents." In other words, to create liability on the part of the corporation, as the law was in December, 1912, the corporation itself must have been guilty of negligence which proximately caused the death. Article 4694, Rev. St. 1911; Sullivan-Sanford Lumber Co. v. Cooper, 105 Tex. 21, 142 S. W. 1168; Commerce Cotton Oil Co. v. Camp, 105 Tex. 130, 145 S. W. 902; Williams v. Coca Cola Co., 150 S. W. 759.

In the last Supreme Court case cited, it was held that the corporation would not be

liable for the acts of a superintendent who had the authority to hire and discharge servants. The court, after discussing the facts as to whether the superintendent had hired the boy who was killed, said:

"We are not to be understood as holding that the superintendent's act, if he did employ the boy, would bind the corporation for his negligence, if negligent."

Again the court said:

"To recover, the plaintiff was required to prove that Oscar was employed by G. W. Day, the general manager, and the only person for whose negligence the corporation was liable."

That language is certainly broad enough to exclude a "corral boss" from binding the corporation by his negligence, who had no right to hire and discharge hands without permission from another authority.

The .case of Routledge v. Rambler Automobile Co., 95 S. W. 749, is cited by appellant as authority to sustain the proposition of the negligence of appellee, although the act of negligence was not that of the corporation. In that case the liability of the company for the negligence of the driver is not discussed and is not adverted to. The cases from other states have no pertinency because not decided under laws similar to ours. Hendrick v. Walton, 69 Tex. 192, 6 S. W. 749. Since that opinion was rendered, in which it was held that no other state had a statute similar to the article cited, the Supreme Court of Arizona has construed a similar act in the same way as the Texas court. Don Yan v. Ah You, 4 Ariz. 109, 77 Pac. 618. The Thirty-Third Legislature, doubtless in response to the later decisions of the Supreme Court, has changed the law so that the second clause of article 4694, instead of placing liability "when the death of any person is caused by the wrongful act, negligence, unskillfulness or default of another," has added ."person or corporation, their agents or servants." Gen Laws 1913, p. 288, c. 143. So at this time any person or corporation is liable for the acts of servants or agents just as the proprietors of railroads, steamboats, stage coaches, and other vehicles have been in the past and are now. The new law went into ·effect on or about August 1, 1913, over seven months after the death of the woman.

It follows that it does not matter whether the judgment in favor of appellee could be based on the verdict or not; it was correct because it followed the law. A verdict should have been instructed outright for appellee.

The questions raised by the cross-assignments become unimportant and need not be ·considered.

The judgment is affirmed.

### On Motion for Rehearing.

Appellant states that Ranney was present ·and superintended the loading of the wagon and directed Chipman to load· the wagon so the women and children could ride on it.

The evidence quoted by appellant in his argument refutes the statement. Ranney came by when the wagon was being loaded and asked why the wagon had not gone, and, upon being told that it was on account of the Mexicans being so slow, said he would send a man "to make them hurry up." He went off and sent the man, and there is no testimony to the effect he ever directed the wagon to be loaded so the women and children could ride on it, and appellant fails to point out any testimony sustaining his assertion to that effect. There is not one word of testimony tending to show that the man sent by Ranney to hurry the Mexicans had any authority from Ranney or any one else to tell the women to get on the wagon. No case has been cited, nor can, we think, be cited, sustaining the proposition that, because the man was sent down to assist in loading the wagon, he thereby became a vice principal and could bind the corporation as to orders which subverted one of its positive rules, which was that women and children should not be permitted to ride on the wagons.

[2] The question of whether Walter Mitchell was a vice principal was one of law under the undisputed facts. Ellwood, the only vice principal who spoke to the Mexicans, ordered them to get out of the wagon and to stay out of it. His statement was not contradicted, and the jury found that he gave the order to the woman, the wife of appellant. That was the last order given to the Mexicans and had the effect of countermanding any orders theretofore given. And yet in spite of that order they got back on the wagon and the woman fell off and was killed. The shipping clerk, in the case of Hugo, Schmeltzer & Co. v. Paiz, 128 S. W. 912, had charge of the men working under him, and the elevator was released by his order. He was held to be a vice principal by this court. The facts of this case do not render that case applicable.

The motion for rehearing is overruled.