**John H. SCHWING et al., Appellants,**

**v.**

**BLUEBONNET EXPRESS, INC., et al., Appellees.**

**No. 454.**

Court of Civil Appeals of Texas, Houston (14th Dist.).

Aug. 11, 1971.

Rehearing Denied Sept. 1, 1971.

R. Douglas Cauley, Cauley & Kershner, Houston, W. V. Dunnam, Jr., Dunnam, Dunnam & Dunnam, Waco, for appellants.

Paul C. Murphy, III, Malone, Murphy & Fenley, Karl A. Maley, Houston, for appellees.

TUNKS, Chief Justice.

This is a case maintained under the Texas wrongful death statutes, Tex.Rev.Civ. Stat.Ann. Arts. 4671, et seq. The death occurred as the result of an automobile collision. The person killed was Margaret Jo Schwing who was the wife of John H. Schwing and the mother of Kathy Eileen Schwing and Anita Maureen Schwing Clark, which three survivors were plaintiffs in the trial court and are appellants here. The collision was between a car driven by John H. Schwing and a truck driven by Johnnie Carlton Belin while within the scope and course of his employment by Bluebonnet Express, Inc. Johnnie Carlton Belin died from natural causes between the date of the collision and the trial. Bluebonnet Express, Inc., and the administrator of Belin's estate were defendants in the trial court and are appellees in this court.

In the trial court the jury found that Belin was negligent in stopping the truck partially in a traffic lane and that such negligence was a proximate cause of the collision. The jury also found that John H. Schwing failed to keep a proper lookout and that such failure was a cause of the collision. The trial court rendered judgment for the defendants and the plaintiffs appealed.

The collision occurred at about 5:45 A.M. on October 25, 1964. It happened in Houston, on the inbound portion of the Southwest Freeway where that freeway converges from a five-lane, one-way thoroughfare into three lanes. Just before the collision Belin was driving the truck in a northeasterly direction (inbound) on the freeway when it stopped because of mechanical trouble. The truck came to rest on the right hand side of the street partly off of the travel portion but with a part of the body extending into the farthest right hand traffic lane. The jury's findings that his stopping the truck in such position was negligence and a proximate cause of the collision are not challenged.

John H. Schwing, too, was driving his car inbound on the Southwest Freeway just before the collision. His wife was asleep on the passenger's side in the front seat of the Schwing car. Schwing was

driving in the right hand lane of the freeway, the lane into which the truck extended after it came to a stop. Schwing intended to turn off the freeway to his right at the exit about a quarter of a mile beyond the point of the collision. The right side of the front end of the Schwing car struck that portion of the rear end of the truck which extended into the traffic lane in which Schwing was driving. Mrs. Schwing was killed instantly. Mr. Schwing received minor personal injuries but the only damages sought in this action were those resulting to the surviving husband and children from the death of Mrs. Schwing.

The appellants' points of error present three basic contentions. The first points of error challenge the evidentiary support for the jury's findings that Mr. Schwing was negligent in failing to keep a proper lookout and that such failure was a proximate cause of the collision. By these points it is stated that there was no evidence of such negligence and proximate cause and that there was insufficient evidence to support the jury's findings thereof. Other points raise the question as to the constitutionality of Tex.Rev.Civ.Stat. Ann. art. 4672 if it is construed to deny the children recovery of damage resulting from the mother's death when such denial is based upon the father's negligence. Finally it is contended that the case should be reversed and remanded because Mrs. Schwing's mother was not joined as a party or named as one for whose benefit the suit was maintained.

On the evening before the collision Mr. and Mrs. Schwing attended a football game at Rice Stadium. After the game they went to a party at a friend's home in southwest Houston about 5 miles from the place where the collision occurred. They arrived at the party at about 11:30 P.M. Alcoholic drinks were served at the party. Mr. Schwing testified that after arriving at the party and before he ate at 1:30 A.M. he had two or three drinks of whiskey mixed with water. He testi-fied that he had nothing more to drink after he ate. In a statement given to the police he said that he had had more than five drinks. Several people who had been with Mr. Schwing at the party testified that he showed no signs of intoxication. Two Houston police officers arrived at the scene of the collision about 15 minutes after it occurred. They testified that he showed no sign of intoxication either at the scene or at the police station where he gave his statement about two and a half hours later. After he gave his statement he was permitted to leave the police station and the officers said that he would not have been so released if he had been intoxicated.

While Mr. Schwing was at the police station a urine specimen was taken from him. Robert F. Crawford, a chemist and toxicologist employed by the Houston Police Department made an alcoholic content test on that specimen. He was called as a witness by the defendants. The evidence showed him to be fully qualified as an expert in his field. He testified that the results of his test indicated that Mr. Schwing had an alcoholic content in his blood of at least .13%. He testified that a urine test was a reliable basis for determining the alcoholic content of the blood. He testified that blood alcoholic content of .10% or more would adversely affect one's ability to drive an automobile. In particular he testified that such an alcoholic content would adversely affect one's reflexes, judgment and visual acuity.

The plaintiffs called, as a rebuttal witness, Dr. Joseph M. Jachimczyk, Chief Medical Examiner for Harris County. He is a medical doctor specializing in pathology and he, too, is fully qualified as an expert. He testified that a chemical analysis of one urine specimen would be wholly unreliable as a basis for determining the alcoholic content of the blood. He agreed with the chemist, Mr. Crawford, however, that .13% of alcohol in the blood would adversely affect one's driving ability.

From this evidence the jury could have believed that Mr. Schwing, at the time of the collision was under the influence of intoxicating liquor, that his visual acuity was impaired and that the lookout that he was keeping did not meet the standard of ordinary care of a sober person.

The appellants argue that at the time of the collision the visibility was so impaired by weather conditions that a proper lookout would not have permitted Mr. Schwing to see the truck in time to stop or otherwise avoid the collision. The several witnesses who testified as to this matter characterized the visibility in general terms. There was testimony that there was a ground fog; there was moisture in the air to the extent that windshield wipers were on; it was hazy; it was necessary to lower the beams of headlights. On the other hand, the report made by one of the investigating officers showed that the weather was clear. There were street lights near the scene. Pictures taken at the scene and introduced in evidence would have justified the jury's conclusion that the weather did not substantially impair visibility.

Mr. Schwing's car was a red Volkswagon. He testified that he was driving 40–45 miles per hour before the collision. The truck had a tailgate which, when released would hang down to approximately 14 inches from the ground. In that position it would obscure from vision the taillights and reflectors on the truck. The tailgate was bent by the collision. The investigating officers testified that there was red paint on the surface of the tailgate that would have been struck if it was hanging down. They also testified that the bend in the tailgate indicated that it was hanging down at the time of the collision.

The tailgate of the truck could have been fixed in a position by which it would have been parallel to the ground. The pictures of the Volkswagon taken after the collision show the damages to its front end to be at the height about where the tail-gate of the truck would have been had it been fixed parallel to the ground. Neither headlight of the Volkswagon was broken. At least the right one probably would have been broken if the car had struck the tailgate when it was hanging down. Mr. Schwing in his statement said that he had seen the taillights and clearance lights of the truck when he was a hundred feet from it. Pictures taken at the scene show the tailgate to be in an upright position.

This phase of the evidence did not preclude the jury's conclusion that the lights on the rear of the truck were visible for such a distance that a proper lookout would have seen them in time to avoid the collision. There was about 30 feet of unobstructed street to the left of the stalled truck. Mr. Schwing could have avoided the collision by turning to his left 3 to 5 feet.

■ Mr. Schwing testified that he first saw the truck when he was 40 feet from it. In his statement he said he saw it when he was 100 feet from it. His car left no skid marks before the collision. The evidence supports a conclusion that one keeping a proper lookout would have seen the stalled truck before Mr. Schwing saw it and from such distance that the collision could have been avoided. It would serve no purpose to cite the many reported cases where the courts have discussed the evidentiary support for findings as to failure to keep a proper lookout and the proximate cause thereof. It is sufficient to say that the tests prescribed in Garza v. Alviar, 395 S.W.2d 821 (Tex.Sup.1965) have been applied to the evidence in this record. A consideration of only the evidence supporting the jury's findings that Mr. Schwing failed to keep a proper lookout and that such failure was a proximate cause of this collision require a conclusion that there was some evidence supporting those findings. A consideration of all of the evidence relating to those findings, giving effect to the jury's exclusive right to pass on the credibility of the witnesses and the weight of their testimony, requires a conclusion that the evidence in this case was

sufficient to support those findings and that they were not so against the weight of the evidence as to be clearly wrong.

These points of error relating to the lack of evidentiary support of the verdict are overruled.

By points of error the appellants take the position that Tex.Rev.Civ.Stat.Ann. art. 4672, if construed to preclude recovery of Mrs. Schwing's children, is unconstitutional. It is argued that such construction denies these children equal protection of the law in that it precludes their recovery when other children whose mother was wrongfully killed, and where the husband of the mother was not contributorily negligent, could recover. This is said to be an unreasonable and arbitrary classification. In support of these points appellants cite Levy v. Louisiana, 391 U.S. 68, 88 S.Ct. 1509, 20 L.Ed.2d 436 (1968) and Dickerson v. Texas Employers' Insurance Assn., 451 S.W.2d 794 (Tex.Civ.App.—Dallas 1970, no writ).

The cause of action in this case accrued before Tex.Rev.Civ.Stat.Ann. art. 4615 was amended (in 1967) and before the Texas Family Code, Sec. 5.01, became effective.

The construction of Art. 4672 by the Texas Courts, including the Texas Supreme Court, of which construction appellants complain is of long standing. The negligence of a husband is imputed to his wife. Survivors may not recover for wrongful death unless the decedent could have recovered. Contributory negligence of the decedent, imputed or otherwise, would have precluded recovery. Dallas Ry. & Terminal Co. v. High, 129 Tex. 219, 103 S.W.2d 735 (1937). It is not the function of an intermediate appellate court to hold unconstitutional such a long established and uniformly followed construction of a statute. Burnett v. City of Houston, 442 S.W.2d 919 (Tex.Civ.App.—Houston (14th Dist.) 1969 writ ref'd); Luvaul v. City of Eagle Pass, 408 S.W.2d 149 (Tex.

Civ.App.—Corpus Christi writ ref'd n. r. e.).

The appellants' points of error relating to the constitutionality of Art. 4672 as construed by the Texas Courts are overruled.

The final basis upon which appellants seek a reversal is upon the ground that Mrs. Schwing's mother was not made a party to the suit nor was the suit maintained for her benefit.

The plaintiffs' petition named the surviving husband and children as plaintiffs. It recited: "The parties just named are, therefore the parties necessary to maintain this action, and are the only surviving beneficiaries of the deceased, under the 'Wrongful Death Act'." After the verdict adverse to their interests had been received they, for the first time, called the court's attention to the fact that Mrs. Schwing's mother was living. At the hearing on the amended motion for new trial the mother appeared and testified to facts from which it could have been concluded that Mrs. Schwing would have contributed to the financial support of her mother if she had lived.

Tex.Rev.Civ.Stat.Ann. art. 4675 provides: "Actions for damage arising from death shall be for the sole and exclusive benefit of and may be brought by the surviving husband, wife, children, and parents of the person whose death has been caused or by either of them for the benefit of all. * * *" It has often been held that only one suit should be maintained against the defendant either by all of the beneficiaries or by one or more for the benefit of all of the others. 17 Tex.Jur. 2d Death by Wrongful Act, Sec. 83. That rule is for the benefit of the defendant in that it prevents him from being subject to multiple suits.

It seems elementary that the plaintiffs should not be heard to complain of the violation of a rule the enforcement of

which would be for the benefit of the defendant. In Williams v. Coca-Cola Co., 150 S.W. 759 (Tex.Civ.App.—San Antonio 1912, no writ) the Court said at page 762:

"The third assignment is based upon the failure of the court to stop the proceedings in the case until the mother of the deceased could be made a party, when it developed upon the trial that she was living. If a judgment had been rendered against defendant in this case, it would have been necessary to reverse and remand because of the failure to make the mother of deceased a party plaintiff. San Antonio & A. P. Ry. Co. v. Mertink, 101 Tex. 165, 105 S.W. 485. However, it does not follow that plaintiffs, losing below, could have the case reversed for such failure to make parties, unless they requested leave to withdraw their announcement of ready for trial, and that they be granted a continuance to make the mother a party to the suit. A judgment against them would not conclude the rights of the mother, and they would be in no position to complain. This assignment is therefore overruled."

Especially should these appellants not be heard to complain because they, by the above quoted pleading invited the error of which they now complain. See Lewis v. Hall, 271 S.W.2d 447 (Tex.Civ.App.— Fort Worth 1954, writ ref'd n. r. e.); 4 Tex.Jur.2d Appeal and Error—Civil, sec. 767. Failure to join Mrs. Schwing's mother was not fundamental error. Schafer v. Stevens, 352 S.W.2d 471 (Tex.Civ.App. —Dallas 1961, no writ). See also McCauley v. Consolidated Underwriters, 157 Tex. 475, 304 S.W.2d 265 (Tex.Sup.1957).

Appellants' point of error relating to the failure to join Mrs. Schwing's mother as a party or to maintain the suit for her benefit is overruled.

The judgment of the trial court is affirmed.